In re William A. MESSICS, Debtor.

UNITED STATES of America,
INTERNAL REVENUE
SERVICE, Claimant,

v.

William A. MESSICS, Objector.

Bankruptcy No. 90–00949.

United States Bankruptcy Court,
N.D. Ohio.

Oct. 22, 1993.

Joel H. Rathbone, Javitch, Block, Eisen & Rathbone, Cleveland, OH, for debtor.

Robert L. Handros, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for I.R.S.

Myron E. Wasserman, Cleveland, OH, Chapter 13 Trustee.

## MEMORANDUM OF OPINION

DAVID F. SNOW, Bankruptcy Judge.

In this chapter 13 case the Court must decide whether to allow a claim by the Internal Revenue Service (the "IRS") for over $29,000 filed nearly 22 months after the claims bar date. For the reasons noted below the Debtor's objection to the IRS claim will be sustained and that claim disallowed.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). This memorandum sets forth the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### Facts

The Debtor, William A. Messics, commenced this case by filing a petition in chapter 7 on March 6, 1990. The schedules filed in this case listed the IRS as holder of a disputed claim in the amount of $21,000. This claim related to Debtor's relationship with Superior Conveying Corporation ("SCC"). Debtor was a 50 percent owner of the shares of SCC as well as its president and one of its directors.

On March 12, 1990, the clerk of the bankruptcy court caused notice to be sent to creditors, including the IRS, that the case had been filed, that it was a no-asset case, and that claims need not be filed. On May 9, 1990, the clerk caused a further notice to

be sent to creditors, including the IRS, that the estate had assets and that claims should be filed on or before August 2, 1990. The IRS acknowledges that it received these notices but did not file a claim or a request for extension of the bar date.

On May 22, 1990, the Debtor converted his case from chapter 7 to chapter 13. On July 3, 1990, the clerk caused notice to be sent to creditors, including the IRS, of the chapter 13 meeting of creditors and bar date (the "conversion notice"). The conversion notice was simply the standard notice mailed to creditors upon the filing of a chapter 13 case.

The conversion notice set July 27, 1990, as the date for the section 341 creditors meeting and October 25, 1990, as the bar date for filing claims. The IRS does not contest that the conversion notice was properly mailed to it. However, it asserts that it did not receive the notice since the file maintained by the IRS' Special Procedures Division on the Debtor did not contain a copy of the conversion notice.

According to the IRS' records, SCC filed with the IRS in March, 1990, a Form 941 showing unpaid taxes. This return, as well as other corporate tax returns filed by SCC, was signed by the Debtor on behalf of SCC. In November, 1990, the IRS filed a tax lien against SCC. On February 6, 1992, the IRS assessed a 100 percent penalty against the Debtor in connection with SCC's failure to pay such taxes. On August 7, 1992, the IRS filed a priority claim in this case for $29,170.34. The Debtor objected to payment of the IRS claim on November 10, 1992, on the ground that it was untimely.

The chapter 13 trustee testified at trial that as of July, 1993, the Debtor had made sufficient payments to pay off his plan unless the IRS claim were allowed. It appears from the Debtor's amended plan confirmed by the Court that the Debtor has paid $500 monthly into the plan. That amount would need to be more than doubled to pay the IRS claim within the remaining months of the maximum 60–month period permitted for a chapter 13 plan under section 1322(c) of the Code.

*Analysis*

There is no question but what the IRS claim was untimely under Rule 3002 of the Federal Rules of Bankruptcy Procedure. That Rule provides in relevant part:

*(a) Necessity for Filing.* An unsecured creditor ... must file a proof of claim ... in accordance with this rule for the claim ... to be allowed....

*(c) Time for Filing.* In a chapter 7 liquidation, ... or chapter 13 individual's debt adjustment case, a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the Code....

The IRS argues (1) that this untimeliness should be excused on the ground that it did not receive notice of the conversion of the case from chapter 7 to chapter 13, (2) that under the authority of *IRS v. Century Boat Co. (In re Century Boat Co.)*, 986 F.2d 154 (6th Cir.1993) and *United States v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087 (6th Cir.1990), a priority claim must be paid even though tardily filed, and finally, (3) that under the authority of *In re Hausladen*, 146 B.R. 557 (Bankr.D.Minn.1992), claims generally may not be disallowed in a chapter 13 case because they are tardily filed.

Rule 2002(f) of the Federal Rules of Bankruptcy Procedure provides that "the clerk, or some other person as the court may direct, shall give the debtor, all creditors, and indenture trustees notice by mail of ... (2) the dismissal or the conversion of the case to another chapter." Rule 9006(e) provides that "[s]ervice of process and service of any paper other than process or of notice by mail is complete on mailing." Although this language suggests that actual receipt of the notice may be unnecessary, *see In re Longardner & Assoc's Inc.*, 855 F.2d 455 (7th Cir.1988), *cert. denied* 489 U.S. 1015, 109 S.Ct. 1130, 103 L.Ed.2d 191 (1989), most courts appear to require receipt for effective notice of a claims bar date. *See Bratton v. The Yoder Co. (In re The Yoder Co.)*, 758 F.2d 1114 (6th Cir.

1985); *Longardner, supra.* Following *Hagner v. United States*, 285 U.S. 427, 430, 52 S.Ct. 417, 418, 76 L.Ed. 861 (1932), these courts have held that "[u]pon proof that mail is properly addressed, stamped and deposited in an appropriate receptacle, it is presumed to have been received by the addressee in the ordinary course of the mails."

An issue in the cases which have considered this presumption concerns the sort of evidence the creditor must present to rebut it. *Yoder* is often cited as the leading case for the minority position that the creditor's mere denial of receipt is sufficient to rebut the presumption, and the IRS apparently relies on this view. But *Yoder* should not be read to compel the conclusion in this case that the IRS did not receive the conversion notice.

The question at issue in *Yoder* was whether the creditor's failure to file his claim timely constituted excusable neglect. The court's conclusion that it did is both well grounded in the facts of the case and supported by the Supreme Court's recent decision in *Pioneer Investment Services Co. v. Brunswick Assoc's Ltd. Partnership*, — U.S. —, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The evidence in *Yoder* did not establish that the notice had been sent to the creditor and the creditor had received no other notice relating to the bankruptcy case. Other creditors testified that they too had not received notice. But even if *Yoder* is interpreted to lay down a categorical rule on presumptions in bankruptcy, that rule would not apply in this case. There is more to the Debtor's case than notice mailed to the IRS and less to the IRS' case than the firm denial of receipt that existed in *Yoder.*

Both the Debtor and the IRS presented evidence on the question of whether the IRS received notice. The Debtor's evidence, reflected in the parties' stipulations, was not only that the conversion notice was duly sent but that such notice was not returned to the Court as undelivered. Moreover, the IRS had received at least two other mailed notices in the Debtor's case.

The IRS evidence of nonreceipt is less persuasive. Its sole evidence was that the conversion notice was not found in the Debtor's file. The custodian of that file testified that he had assumed the responsibility for Debtor's file in 1991, the year after the conversion notice was sent to the IRS. There is nothing in the record to preclude the possibility that the notice of conversion was received by the IRS but not lodged in the proper file or, if lodged in the proper file, removed before the witness assumed responsibility for Debtor's file. The IRS is a very large organization. But it presented no evidence to suggest that it was more likely that the conversion notice had been lost in the mail than in handling by the IRS. *In re Morelock*, 151 B.R. 121 (Bankr.N.D. Ohio 1992); *see In re Bennett*, 135 B.R. 72 (Bankr.S.D. Ohio 1992). Based on this evidence the Court concludes that it is more probable than not that the conversion notice was in fact received by the IRS and therefore that the Debtor met his burden of proof on this issue.

In *Yoder*, on the other hand, there was a real and unresolved question as to whether the notice had been mailed to the creditor. *Yoder* has not been interpreted to require a finding that notice was not given simply because the creditor denied receipt. *Morelock, supra, Bennett, supra; see also In re Schepps Food Stores, Inc.*, 152 B.R. 136 (Bankr.S.D.Tex.1993). There is no indication in other Sixth Circuit decisions that *Yoder's* categorical language on presumptions will be given an expansive reading. *See Anderson v. TVA*, 991 F.2d 794 (6th Cir.1993). To do so in cases like this would vitiate the effectiveness of notice given by mail and preclude the finality required for the administration of bankruptcy cases. *See Osborn v. Ricketts (In re Ricketts)*, 80 B.R. 495 (Bankr. 9th Cir.1987).

■ But even if the conversion notice was lost in the mail and the IRS did not receive it, the IRS claim should nevertheless be barred as untimely under the circumstances of this case. Despite knowledge that it was named as a creditor in the Debtor's chapter 7 asset case, the IRS made no effort to determine the nature of

its claim or to protect its interest prior to the bar date. The IRS argues, however, that it would have responded differently to a notice of conversion to chapter 13 since its priority claim would be discharged in chapter 13 but not in chapter 7. But the conversion notice merely set a date for the creditors' meeting and extended the bar date of which the IRS already had knowledge.

It is speculative at best to suppose that having ignored the chance to file a claim in a chapter 7 asset case, the conversion notice would have counsel to the IRS file its claim prior to the October 25 bar date. The IRS witness now responsible for the Debtor's case made clear that his reaction to the chapter 7 notice, and the prudent reaction, would have been to investigate the reason why the Debtor had listed the IRS as a creditor in his schedules. Unlike *Yoder* this is not a case where absent notice of a bar date the creditor could justifiably assume that a timely claim could be filed.

The Debtor, on the other hand, did everything required of him to prosecute his chapter 13 plan and to earn a discharge upon completion of plan payments. Unlike *Yoder*, there is no question that he properly noticed the IRS of the bar date. Allowing the IRS priority claim would undermine Debtor's plan and preclude discharge despite more than two years performance under the plan.

■ The IRS also argues that it should not be penalized for filing its claim late since it was not aware of its claim until long after the bar date. It argues that until it had processed SCC's returns, attempted to collect the tax from SCC, and come up empty, it was not in a position to assert its 100 percent penalty claim against the Debtor. The IRS' evidence effectively dramatized the fact that the IRS cannot by following its ordinary procedures file a claim against a responsible officer within the 90–day period provided in Rule 3002(c). But the IRS has cited no authority for the proposition that this excuses it from compliance with the Rule 3002(c) filing deadline and the Court is aware of none. The IRS failed to take advantage of section (c)(1) of

Rule 3002, which was intended to afford governmental entities some leeway in dealing with the deadlines for filing claims in chapter 7 and chapter 13 cases.

As a practical matter, the IRS could have protected its claim had it chosen to do so. The Debtor listed the IRS as a creditor. His schedules noted his involvement with SCC. Had the IRS made any inquiry as to why it was listed as a claimant in the Debtor's case, it would have discovered a possible responsible officer claim against the Debtor in the $20,000 range well prior to the October 25, 1990, bar date. There is no evidence in this case that the Debtor could or should have done more to alert the IRS to a possible claim.

■ The IRS claim was filed about two years after the Debtor had commenced making payments into his plan and after dividends had been paid by the chapter 13 trustee to his creditors. If the IRS claim were allowed, either his case would have to be dismissed, depriving him of a discharge, or he would have to extend his plan to 60 months and dramatically increase his payments. There is no evidence in this case as to whether the Debtor could manage such extension and increase. In general, late filed claims, particularly priority claims, would undermine the statutory policy of protecting confirmed chapter 13 plans. This policy is reflected in section 1330 of the Code which requires a request for revocation of a confirmed plan to be made within 180 days after confirmation. *See also* Rule 9024 of the Bankruptcy Rules of Procedure.

For similar reasons the Court deems the IRS's reliance on *Century Boat* and *Cardinal, supra,* as misplaced. Both cases involved chapter 7 liquidations where no distribution had been made at the time the IRS filed its late claim. In neither case was the IRS listed as a creditor and it had no notice of the bankruptcy filings. In those cases the IRS could not have filed its claims timely. *Cardinal* did, however, include language relating to the payment of tardily filed priority claims which went beyond the facts in the case. But, as the

court in *Century Boat* makes clear, this language must be read in the context of the facts of that case.

*Cardinal Mine Supply* did not establish the rule that a priority creditor who files an untimely proof of claim because it did not receive notice of the bankruptcy will always receive priority distribution despite the untimely filing. We simply decided then, and we reaffirm today, the principle that a priority creditor who fails to receive notice of the bankruptcy and consequently files an untimely proof of claim is not barred from receiving priority distribution as a matter of law ... *Cardinal Mine Supply* established a narrow exception for priority creditors who lack notice of the bankruptcy. Not every priority creditor, however, may invoke the holding in *Cardinal Mine Supply*. At a minimum, the creditor must file its proof of claim before the trustee makes any distribution from the estate and before the bankruptcy court closes the estate.

986 F.2d at 158.

■ Finally, the Court rejects the IRS argument that tardily filed claims may not be disallowed in a chapter 13 case pursuant to Rule 3002(c). This argument is supported most prominently by *In re Hausladen, supra,* a case decided *en banc* by the bankruptcy judges for the District of Minnesota. The bankruptcy judges for the Western District of Michigan, also sitting *en banc*, thereafter reached the opposite conclusion in *In re Zimmerman*, 156 B.R. 192 (W.D.Mich.1993). Both opinions explore the issues raised competently and in depth. I see no need to repeat their analysis but will simply highlight several of the reasons which persuade me that the Michigan judges reached the better result.

The *Hausladen* court bases its argument on the fact that section 502 of the Code purports to provide an exclusive list of the grounds for claims disallowance which does not include late filing. Standing alone section 502(b) certainly gives weight to the *Hausladen* argument. But sections 501 and 502(a) of the Code appear clearly to recognize that the filing of claims may be a

condition to claim allowance, and other sections of the Code appear premised on an assumption that tardy filing will have serious consequences. *See, e.g.,* section 726(a)(2)(C) and (a)(3). These sections at least suggest that late filing might preclude claim allowance. Quite apart from the Rules or legislative history these sections suggest the inquiry as to whether section 502(b) must be read to exclude timely filing as a condition to claim allowance. This inquiry is not precluded by the ordinary meaning of the words used in section 502(b). Therefore, there is no practical alternative but to look beyond the words of section 502(b) for an answer.

The Michigan judges are correct in concluding that Rule 3002(c) requires that claims be timely filed to be allowed if the language of that Rule is given its ordinary meaning. *Hausladen* admits as much but defends its strained interpretation of Rule 3002(c) as necessary to avoid conflict with its conclusion that section 502(b) precludes disallowance of tardy claims. *Hausladen* does not adduce any other support for its interpretation of Rule 3002(c) and it seems fair to conclude that the draftsmen of the Rules assumed that tardily filed claims might be disallowed for that reason.

The legislative history to section 501 appears to contemplate that untimely claims will be barred.

The Rules of Bankruptcy Procedure will set the time limits, the form, and the procedure for filing, which will determine, whether claims are timely or tardily filed. The Rules governing time limits for filing proofs of claims will continue to apply under section 405(d) of the bill. These provide a six-month bar date for the filing of tax claims. In light of the difficult administrative burden on taxing authorities, especially the Internal Revenue Service, in dealing with a bankrupt taxpayer and being required to prepare and file a tax claim, it is anticipated that any amendment to the Rules of Bankruptcy Procedure will not deprive taxing authorities of this amount of time to file proofs of claims.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 351 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 61 (1978).

It is difficult to understand why Congress was worried about the IRS having sufficient time to file its claims unless they would be barred or subordinated if filed late. Apart from section 502(b) there is no other intimation in the Code itself, the Rules, or the legislative history that Congress intended generally to abolish the requirement in the Bankruptcy Act that claims be timely filed to be allowed. Section 726(a)(3) of the Code does provide for subordination of late filed claims rather than barring them. Section 726(a)(2)(C), in a clear change from the Act, permits certain late filed claims to be paid without subordination where the creditor lacked notice or knowledge of the case. But section 726 appears premised on the assumption that untimely filed claims would be barred, not on the assumption that they would be allowed although subordinated in chapter 7. Otherwise it is difficult to understand why Congress would not in the reorganization chapters have dealt specifically with the serious fairness and administrative problems inherent in allowing late filed claims in reorganization cases.

It seems anomalous to suppose that Congress would have made such a radical change from prior bankruptcy practice without some indication that this was its intent.

When Congress amends the bankruptcy laws, it does not write "on a clean slate." Furthermore, this Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history.

*Dewsnup v. Timm,* —— U.S. ——, ——, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992) (citations omitted). It seems equally anomalous to suppose that such a change, had it been intended by Congress, would have gone undetected by the draftsmen of the Rules. It seems far more credible to suppose that Congress intended generally to continue past practice but to relegate claims filing deadlines in the various bankruptcy chapters to the rules governing procedural matters and to view the rules as the better place to provide for the differing procedures and filing deadlines appropriate for different bankruptcy proceedings. *See Pioneer Investment Services Co. v. Brunswick Assoc,* —— U.S. ——, —— n. 4, 113 S.Ct. 1489, 1495 n. 4 and text, 123 L.Ed.2d 74 (1993).

It is difficult to see how reorganization plans could be devised without bar dates on claims allowance. The amount a chapter 13 debtor can devote to a plan is a function not only of his projected available income but of the type and amount of claims against him. Both the debtor and creditors who might otherwise object to the plan must be able to determine how much will be received and how much must be paid under the plan. Without a bar date the debtor could not realistically anticipate receiving a discharge despite years of conscientious payment of available income. Moreover creditors could not count on dividends that might have been bargained in formulating a plan.

The *Hausladen* court suggests that these problems may be avoided by drafting the plan to provide no payment on untimely filed claims. If this is correct, *Hausladen* will presumably result in reorganization plans including boilerplate disallowing late filed claims. If so, the only impact of the dramatic change from the Act to the Code perceived by *Hausladen* will be in those cases, such as this, decided prior to the debtor's understanding the need for such boilerplate. This appears an unfair and cumbersome way to reach the same result that Rule 3002(c) now mandates and would make the change from the Act to the Code that *Hausladen* perceives little more than a *tour de force.*

Finally, the question at issue was implicitly before the Supreme Court in *In re Pioneer, supra.* Although the *Hausladen–Zimmerman* conflict appears not to have been considered, both the opinion and the dissent in *Pioneer* take for granted

that untimely claims will be barred in chapter 11 unless the untimeliness is due to excusable neglect. It seems unlikely that the Court would have struggled so to determine whether the late filing at issue was due to excusable neglect if late filing were not perceived a bar to allowance.

The Court's order in conformity with this opinion is attached.

### ORDER BARRING CLAIM OF INTERNAL REVENUE SERVICE

A memorandum of opinion having been issued this date on the Debtor's objection to the claim filed by the Internal Revenue Service,

IT IS ORDERED, ADJUDGED AND DECREED that the Debtor's objection to the claim of the Internal Revenue Service be, and it hereby is, sustained and the claim of the Internal Revenue Service is barred.