**In re LITAMAR, INC., Debtor.**

**Bankruptcy No. 92–30044.**

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

Dec. 15, 1994.

John J. Hunter, Sr., Trustee, Toledo, OH.

Russell R. Miller, Toledo, OH, for Perrysburg Marketplace Co.

Lawrence Gibson, Toledo, OH, for Universal Furniture Industry.

Mary Ann Whipple, Toledo, OH, for Chrysler First Commercial Corp.

Thomas W. Heintschel, Toledo, OH, for D.M. Reid Associates, Ltd./Midwest.

David J. Simko, Ohio Attorney General, Toledo, OH.

Robert Trusiak, Assistant U.S. Attorney, Toledo, OH.

Raymond L. Beebe, Toledo, OH, for Debtor.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court on the Objection of D.M. Reid Associates, Ltd. to the Trustee's Notice of Intent to Make a First and Final Distribution, the Trustee's Response to the Objection, and the Reply of D.M. Reid Associates, Ltd. A Hearing was held and the parties were afforded the opportunity to present evidence and make arguments they wished the Court to consider. This Court has reviewed the arguments of counsel, exhibits, as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that the Objection of D.M. Reid Associates, Ltd. shall be sustained.

### FACTS

The facts of this case are uncontroverted. Creditor D.M. Reid Associates, Ltd. (hereafter "D.M. Reid") filed a proof of claim in the amount of One Hundred Two Thousand Five Hundred and Fifty One and 99/100 Dollars ($102,551.99) on May 1, 1992, the timeliness of which is not disputed. On March 8, 1993, D.M. Reid filed an Amended Proof of Claim, reducing the claim to Sixty-five Thousand Nine Hundred and 60/100 Dollars ($65,-900.60).

On August 4, 1993, D.M. Reid filed a Second Amended Proof of Claim, using the Official Proof of Claim Form, Form # 10. Regarding item number 4 on the claim form, D.M. Reid put an "x" in the secured claim box, and in the related space put the amount Sixty-five Thousand Nine Hundred and 60/100 Dollars ($65,900.60). Also in item number 4, D.M. Reid placed an "x" in the unsecured priority claim box, but instead of placing a numeric amount in the related space, placed an asterisk (" * "). At the bottom of the page in the margin, D.M. Reid then typed in, " * To the extent that Claimant's secured claim is not allowed to attach to the proceeds held by the trustee, the entire amount of Claimant's claim is a Chapter 11 priority claim for post-petition credit." Fur-

ther, in item number 5, D.M. Reid reflected a Sixty-five Thousand Nine Hundred and 60/100 Dollars ($65,900.60) claim in the space provided for secured claims, but did not make any such indication in the space provided for priority claims.

On December 29, 1993, this Court issued a final Memorandum Opinion and Order on the Motion of D.M. Reid to Compel the Trustee to Turn Over Funds Under His Control. This Motion was the subject of protracted litigation, and resulted in an Order of this Court compelling the Trustee to turn over to D.M. Reid the sum of Thirty-four Thousand One Hundred Fifty-one and 78/100 Dollars ($34,151.78). D.M. Reid has not filed an amended proof of claim subsequent to the Court's Order.

On August 11, 1994, John J. Hunter, the Trustee (hereafter "Trustee") filed a Notice of Intent to Make a First and Final Distribution and Request for Order Approving the Same. D.M. Reid objected to the proposed distribution because the remainder of its claim, totaling Thirty-one Thousand Seven Hundred Forty-eight and 82/100 Dollars ($31,748.82), was not treated as a priority claim. In his response, the Trustee asserts that D.M. Reid is not entitled to priority status under Bankruptcy Rule 3002, having not properly filed an amended claim reflecting its priority status within 30 days of the date of judgment. In its Reply, D.M. Reid contends that the strict compliance with the official forms is not necessary, and the Rules do not justify denial of its administrative priority claim.

## *LAW*

**11 U.S.C. § 726 Distribution of the property of the estate**

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title:

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection which is—

(A) timely filed under section 501(a) of this title;

(B) timely filed under section 501(b) or 501(c) of this title; or

(C) tardily filed under section 501(a) of this title, if—

(i) the creditor that holds such a claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and

(ii) proof of such claim is filed in time to permit payment of such claim;

(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title other than a claim of the kind specified in paragraph (2)(C) of this subsection;

(4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;

(5) fifth, in payment of interest at a legal rate from the date of the filing of the petition, or any claim paid under paragraph (1), (2), (3), or (4) of this subsection; and

(6) sixth, to the debtor

## 11 U.S.C. § 507. Priorities

(a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under § 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28 [28 U.S.C. §§ 1911 et seq.].

## Bankruptcy Rule 3002. Filing Proof of Claim or Interest

(a) NECESSITY FOR FILING. An unsecured creditor or an equity security holder must file a proof of claim or interest in accordance with this rule for the claim

or interest to be allowed, except as provided in Rules 1019(3), 3003, 3004 and 3005.

\* \* \* \* \* \*

(c) TIME FOR FILING. In a chapter 7 liquidation, chapter 12 family farmer's debt adjustment, or a chapter 13 individual's debt adjustment case, a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the Code, except as follows:

\* \* \* \* \* \*

(3) An unsecured claim which arises in favor of an entity or becomes allowable as a result of a judgment may be filed within 30 days after the judgment becomes final if the judgment is for the recovery of money or property from that entity or denies or avoids the entity's interest in property. If the judgment imposes a liability which is not satisfied, or a duty which is not preformed within such period or such further time as the court may permit, the claim should not be allowed.

### DISCUSSION

Two issues are presented in this case. The first is whether D.M. Reid's use of an asterisk on the Claim Form would render the priority claim invalid. The second is whether the claim of D.M. Reid should be denied priority status because a timely proof of claim has not been filed since this Court issued its December 29, 1993 judgment determining the extent of D.M. Reid's security interest. As the allowance or disallowance of claims against the estate are core proceedings under 28 U.S.C. § 157(a), this case is a core proceeding.

■ This Court does not believe there is any basis for the Trustee's position that the use of the asterisk to indicate the priority status of any excess debt over the value of the secured interest is fatal to D.M. Reid's priority claim. The Trustee was unable to cite any case in which a claim was disallowed only due to a shortcoming in the use of an Official Form. Indeed, the use of an official form in itself far surpasses many informal proofs of claim that have been allowed in

case law. See In re McCoy Mang. Services, Inc., 44 B.R. 215 (Bankr.W.D.Kentucky 1984); In re Glick, 136 B.R. 654 (Bankr. W.D.Va.1991); In re Sambo's Restaurants, Inc., 754 F.2d 811 (9th Cir.1985); In re Thornlimb, 37 B.R. 874 (Bankr.D.R.I.1984); In re Sullivan, 36 B.R. 771 (Bankr.E.D.N.Y. 1984). Thus, this Court concludes that the amended proof of claim filed by D.M. Reid on August 4, 1993 was sufficient in form.

■ The Trustee's stronger argument is that the claim of D.M. Reid is untimely filed as required by Bankruptcy Rule 3002(c)(3). Though the Trustee bases his argument of the first sentence of this rule, this Court finds such reliance misplaced, and the Trustee's argument could only stand on the second sentence in this rule. The Court will permit this error and consider this position.

The first sentence of Bankruptcy Rule 3002(c)(3) states that, "An unsecured claim which arises in favor of an entity or becomes allowable as a result of a judgment may be filed within 30 days after the judgment becomes final if the judgment is for the recovery of money or property from that entity or denies or avoids the entity's interest in property" (emphasis added). Note that this portion of the rule is permissive, as evidenced by the use of the word "may" rather than "shall". This permissive section of the rule does not apply to the present claim of D.M. Reid, because the subject claim does not fall within either of the two types of judgments that follow the "if" of the rule. The first type deals with judgments which order the creditor to turn over of property in the creditor's possession, such as the result of a preferential transfer. The second type deals with judgments where an entity becomes a creditor after its interest in property is avoided by the judgment. Neither of these types apply in the case of D.M. Reid, where the judgment related to the creditor's motion to have the Trustee return property in its possession which is really property of the creditor. The judgment only determined the extent of the D.M. Reid's interest, it did not avoid an interest D.M. Reid possessed.

The following portion of the rule would better suit a claim such as that of D.M. Reid,

"If the judgment imposes a liability which is not satisfied, or a duty which is not performed within [30 days] or such further time as the court may permit, the claim *shall not* be allowed." Bankr.Rule 3002(c)(3), (emphasis added). First note the use of the word "shall", making the obligation to file a timely proof claim mandatory. This portion of the rule covers a much broader scope of situations arising from judgments, as evidenced by the broad language encompassing any judgment that "imposes a liability" or a duty on the debtor's estate. Note that the Court's discretion provided in this rule pertains to the Court's ability to lengthen the time for the debtor's estate to perform a duty imposed by the judgment, not to extend the time a creditor has to file its proof of claim. Thus, under a strict and narrow reading of this rule, D.M. Reid's priority claim would fail as a result of its not filing a proof of claim within the thirty days following this Court's decision dated December 29, 1993.

This Court holds that such a strict reading of this Rule would be improper given the broader context of Rule 3002. Rule 3002(c) states that a proof of claim shall be filed within 90 days after the date set for the first meeting of creditors, with the enumerated exceptions, one of which is the aforementioned Rule 3002(c)(3). This Court does not believe, as the Trustee would assert, that a creditor is required under this rule to file a proof of claim after a judgment is rendered if it had already filed a proof of claim before the judgment was rendered. Rather, the Rule 3002(c)(3) simply allows a creditor, having no claim for which to file a proof of claim before the judgment, to file a proof of claim after the judgment when that claim was created by the judgment. The purpose of this rule does not apply to the present case where D.M. Reid filed a proof of claim before the judgment, and indeed demonstrated its interest in this claim through protracted litigation on the subject. To not allow the claim in this situation would be to harken back to the days of the King's Court where strict adherence to procedure dominated the substantive rights of the parties.

The Court can find other legal doctrines which support this position. First is the judicially created doctrine which permits the filing of informal proofs of claim, which can later be amended, as mentioned *supra*. This doctrine was best described in the Sixth Circuit by the Court in *In re McCoy Mang. Services, Inc.,* 44 B.R. 215 (Bankr.W.D.Kentucky 1984). In *McCoy,* the Court found that a creditor's motion to set aside an agreed order constituted an informal proof of claim. The Court's analysis of the case law is as follows:

> Courts have interpreted the Bankruptcy Code and its rules of procedure to require five elements in order for an informal proof of claim to be valid and amendable:
>
> 1). the proof of claim must be in writing;
> 2). the writing must contain a demand by the creditor on the debtor's estate;
> 3). the writing must express an intent to hold the debtor liable for the debt;
> 4). the proof of claim must be filed with the Bankruptcy Court; and
> 5). based on the facts of the case, it would be equitable to allow the amendment.

*McCoy* at 217.

Though it may be debatable whether filing a proof of claim stating a secured debt constitutes a demand on the debtor's estate since secured property may not technically be part of the debtor's estate, there can be no debate that the language typed at the bottom of D.M. Reid's claim form evidences a demand upon the debtor's estate. Further, the protracted litigation which ensued was a clear demand on the debtor's estate, with a considerable number of motions filed intending to make claims against the estate. Considering this doctrine, the Court finds it would be inequitable to not allow D.M. Reid's priority claim for simply not timely filing a proof of claim form only debatably necessary for a claim of which the Trustee is all too aware.

The second doctrine which supports the Court's position emanates from controversy exemplified in the Sixth Circuit's decisions in *U.S. v. Cardinal Mine Supply, Inc.,* 916 F.2d 1087 (1990), and *In re Century Boat Co.,* 986

F.2d 154 (1993). In *Cardinal*, the Court came to the conclusion that because § 726(a)(1), which provides that priority claims get paid first from the debtor's estate, did not make a distinction between timely and tardily filed priority claims, while § 726(a)(2) and § 726(a)(3), which deal with unsecured non-priority claims, did make this distinction, that Congress intended to allow the payment of priority claims whether or not timely filed. *Cardinal* at 1091. As the *Cardinal* Court stated, "Since their priority is set in the statute, it is reasonable that the priority is more important than whether they were tardily filed either because they had received no notice of the bankruptcy or for some other reason." *Id.* This reasoning was indeed persuasive to other circuits which adopted similar holdings. *In re Pacific Atlantic Trading Co.,* 33 F.3d 1064 (9th Cir. 1994); *In re Vecchio,* 20 F.3d 555 (2nd Cir. 1994).

However, in *Century Boat*, the Court shied away from its position, and while not expressly overturning its decision in *Cardinal,* it did explain that the rule was a narrow exception to the timeliness requirements of Bankruptcy Rule 3002(c). *Century Boat* at 158. A split of authority exists as to whether the *Cardinal* rule applies anywhere outside the factual circumstance where a priority creditor was not given appropriate notice and files late. At issue is the language of the Court which could be read to narrow the rule, but the Court held that though the priority claimant did receive notice and did not file a timely claim, their claim should nevertheless receive priority status due to equitable circumstances. *Id.*

Many Courts in this district have taken the view that the Court's holdings in *Century Boat* and *Cardinal* are limited only to tardy priority claimants who did not receive notice of the bankruptcy. *In re Messics,* 159 B.R. 803, 807–08 (Bankr.N.D.Ohio 1993); *In re Electrical Management, Inc.,* 133 B.R. 90, 91–92 (Bankr.N.D.Ohio 1991); *In re Larry Merritt Co.,* 169 B.R. 141 (E.D.Tenn.1993). However, of these cases, only *Messics* would appear to conclusively rule out the possibility that late filed priority claims could be allowed priority status in some circumstances

even though notice was received. As the Court noted in *Electrical Management,* "While the Sixth Circuit held Section 726(a)(1) did not by its terms preclude payment of late filed priority claims, it did not hold such payment was required irrespective of the effect of applicable bankruptcy rules." 133 B.R. at 92. This Court believes that the concern expressed in *Electrical Management,* that *Cardinal* will require Bankruptcy Courts to accept all late filed priority claims, is the reason for the opposition *Cardinal* has received. However, this Court does not believe that such an interpretation is a necessary outgrowth of the Court's reasoning in *Cardinal.*

As the Court in *Merritt* noted, "*Century Boat* clearly envisions that priority creditors under § 726(a)(1) are subject, pursuant to Bankruptcy Rule 3002, to the bar date established therein. The Sixth Circuit has not had occasion, however, to consider the effect of a § 726(a)(1) priority creditor's 'knowing' failure to comply with the bar date." 169 B.R. at 142. Thus, the issue is still quite open.

This Court is sympathetic to the concerns expressed by the Court in *Cardinal.* Not only does § 726(a) not expressly mandate subordination of late filed priority claims, it makes no allowance for such tardy claims at all. This Court believes that the proper and most equitable interpretation of the Bankruptcy Code and the Sixth Circuits decisions in *Cardinal* and *Century Boat* was expressed by the Court's in *In re Brenner,* 160 B.R. 302 (Bankr.E.D.Mich.1993). In *Brenner,* the Court explained:

> In [*Cardinal* ], the court held that, 'the fact that certain claims are raised to a priority status as defined in the statute deems it reasonable that the priority status is more important than whether they were tardily filed either because they received no notice of the bankruptcy or some other reason.' [*Cardinal* at 1091].
>
> &ast; &ast; &ast; &ast; &ast; &ast;

Although the *Century Boat* court allowed the late priority claim, the court cautioned that its ruling was not meant to imply that all late filed claims are acceptable. In fact, the court warned that the

allowance of the claim was to be narrowly construed.

The *Century Boat* court did caution that prior to a creditor invoking the rule regarding late claims as established in *Cardinal*, it must meet certain stringent requirements. The Creditor must:

1. File its Proof of Claim before the Trustee makes any distribution from the estate and:

2. Before the Bankruptcy Court closes the estate;

3. The creditor must not exhibit any indication of bad faith; or

4. Undue prejudice to the creditors.

*Id.* at 158.

In the instant case all of the elements are present. The Trustee has not made a distribution of the assets and, the creditors are not unduly prejudiced. All creditors in this case receive a benefit from the unexpected recovery of assets. The filing of a claim some 35 days after the bar date is not bad faith on the part of the [priority creditor]. Therefore, the holding in *Century Boat* does not preclude tardy filed claims with notice of bankruptcy proceedings.

Thus, we may infer that certain creditors ... are conferred priority status and such status in more important than the timeliness of the filing of the claim.

160 B.R. at 305–06.

Similarly in the instant case, this Court feels that the equities of the case greatly favor the allowance of D.M. Reid's priority claim. The considerable effort the creditor has shown in pursuing this claim, and the obvious notice given to the Trustee through this pursuit, would make any other outcome unjust. The Court can see no reason why the adoption of the rule enunciated in *Brenner* would harm a Trustee's administration of the Bankruptcy estate. Indeed, it presents little more administrative difficulty than allowing tardily filed non-priority claims, as mandated by § 726(a)(2) and (3). Rather, it simply allows the Bankruptcy Court the discretion to determine when the allowance of a late filed priority claim would be equitable. This Court agrees that the concern for equity

is especially important in the context of priority creditors under § 507, as many of the priority creditors enumerated in that section are likely to be unsophisticated in the area of Bankruptcy law and procedure, or are large governmental bureaucracies that, though sophisticated, are not always able to meet filing deadlines in good faith.

While this Court does not make a determination in this opinion as to the propriety of D.M. Reid's claim of priority status, which has not been disputed by the Trustee on any other grounds than addressed in this decision, this Court will not disallow D.M. Reid to receive priority status on the basis that its proof of claim was improper.

In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

**ORDERED** the Objection of D.M. Reid to the Trustee's Notice of Intent to Make First and Final Distribution be, and is hereby, *SUSTAINED.*