**In re Frank J. HOBACK, Delores Y. Hoback, Debtors.**

**The OHIO CASUALTY INSURANCE COMPANY, Plaintiff,**

**v.**

**Frank J. HOBACK and Dolores Y. Hoback, Defendants.**

**Bankruptcy No. 94–31262(2)7. Adv. No. 94–3081.**

United States Bankruptcy Court, W.D. Kentucky.

Feb. 28, 1995.

David C. Ford, Louisville, KY, for Debtors/Defendants.

George B. Hocker, Lexington, KY, for plaintiff.

### *MEMORANDUM-OPINION*

J. WENDELL ROBERTS, Chief Judge.

This matter is before the Court upon the Motion to Dismiss filed by the Defendants, Frank J. Hoback and Dolores Y. Hoback, Debtors in this Chapter 7 case. The motion seeks dismissal of The Ohio Casualty Insurance Company's ("Ohio Casualty"), Motion to Set Aside the Order of Discharge. The issue is whether Plaintiffs received notice of the bankruptcy.

### *FACTS*

The Debtors, Frank and Dolores Hoback, previously operated certain health spas doing business under the name of Women's Workout World/New Woman Health and Fitness Center. A state statute required Hobacks to post a surety bond for the protection of the health spa members. Ohio Casualty, as surety on the bonds, issued a $50,000 bond on behalf of the spa operating at 6801 Dixie Highway and a $50,000 bond on behalf of the spa located at 176 Hurstbourne Lane. Frank and Dolores Hoback each personally agreed to indemnify Ohio Casualty for any loss it sustained on said bonds.

Both spas ultimately went out of business and many of the members contacted the Attorney General's office seeking reimbursement for the membership fees they had paid. On July 21, 1994, the Attorney General submitted a $62,159.35 claim to Ohio Casualty under the bond issued on behalf of the spa located on Hurstbourne Lane. On the same day, the Attorney General submitted a $49,-999.36 claim to Ohio Casualty under the bond

issued on behalf of the spa located on Dixie Highway. Ohio Casualty asked Frank Hoback to verify the accuracy of the information set forth within the respective bond claims submitted by the Attorney General. By letter dated August 16, 1994, Hobacks' attorney advised that the Hobacks were not able to address the accuracy of the information set forth within said claims.

Ohio Casualty admits that subsequent to the Attorney General's submission of the claims, it was apprised by the Hobacks' attorney, John Ford, that the Hobacks had filed personal bankruptcy. Attorney Ford, in a letter dated August 5, 1994 and received by Ohio Casualty on August 8, 1994, stated that Ohio Casualty had been listed as an unsecured creditor under Schedule F of the Bankruptcy Petition. The letter further advised Ohio Casualty that the Petition had been filed on May 5, 1994. While Ohio Casualty carefully avoids stating *when* it contacted the Bankruptcy Court, it states the Clerk informed it that Ohio Casualty had, in fact, been designated as a creditor and that notices had been sent to it. Additionally, the Clerk advised that notices had been sent to Ohio Casualty regarding the 11 U.S.C. § 341 First Meeting of Creditors held June 10, 1994. The § 341 meeting notice designated August 9, 1994 as the last day to file a nondischargeability complaint.

Ohio Casualty does not dispute that the notices were sent. It tenders, however, the affidavit of a claims supervisor to the effect that "to his knowledge neither he nor anyone else at Ohio Casualty received any notice." Ohio Casualty argues that the failure to receive the notice prevented it from having the opportunity to object to the discharge of Hobacks' obligation to reimburse Ohio Casualty for the amount it was required to pay under the respective bonds.

Ohio Casualty admits that it has not yet had the opportunity to fully investigate the facts and circumstances surrounding the bond claims and cannot, at this point, state that there has been any conduct on the part of the Hobacks which would cause their indebtedness to Ohio Casualty to be considered nondischargeable under 11 U.S.C. § 523. Likewise, Ohio Casualty cannot specifically state that its investigation will ultimately demonstrate the existence of facts which would cause their indebtedness to Ohio Casualty to be considered nondischargeable. Ohio Casualty only states that there are certain facts which raise a question as to whether the Hobacks' debt is nondischargeable. Therefore, Ohio Casualty requests that it be allowed to investigate its possible claims against the Debtors and file a late nondischargeability complaint.

### *LEGAL ANALYSIS*

Rule 9006(e) of the Federal Rules of Bankruptcy Procedure provides for service by mailing and the common law has long recognized a presumption that an item properly mailed was received by the addressee. *Hagner v. United States,* 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932). The presumption arises upon proof that the item was properly addressed, had sufficient postage, and was deposited in the mail. *Simpson v. Jefferson Standard Life Insurance Co.,* 465 F.2d 1320, 1323 (6th Cir.1972).

The Clerk of the Bankruptcy Court sent Ohio Casualty the Notice of the Creditors' Meeting and an Order of Discharge of the Debtors. The Clerk's records show that the mailings were not returned and Ohio Casualty does not challenge the validity of the address used. Based upon these facts a presumption of receipt arose in this case.

The presumption of receipt of a pleading is however, a rebuttable presumption. *In re Messics,* 159 B.R. 803 (Bkrtcy. N.D.Ohio 1993). In determining whether the presumption can be rebutted a Court must consider all of the facts and circumstances to determine whether it is more likely that the notice was received or that it was lost in the mail.

The leading case on this issue is *In re Yoder Co.,* 758 F.2d 1114, 1118 (6th Cir.1985). In that case, the Sixth Circuit stated that the "testimony of non-receipt, standing alone, would be sufficient to support a finding of non-receipt; such testimony is therefore sufficient to rebut the presumption of receipt." *Id.*

The broad language of this opinion has been interpreted in a narrow fashion. *See,*

*In re Monroe Distributing, Inc.,* 176 B.R. 458 (Bkrtcy.N.D.Ohio 1995) ("[T]he facts of *Yoder* reveal that there was a real question as to whether the bar date notice was in fact mailed to the creditor"). *In re Messics,* 159 B.R. 803 (Bkrtcy.N.D.Ohio 1993) (discussing facts and circumstances test) and *In re Morelock,* 151 B.R. 121 (N.D.Ohio 1992) (discussing credibility test). *See also, In re Eagle Picher Industries, Inc.,* 175 B.R. 943 (1994).

The present case does not present the same situation as *Yoder.* To gain the protection of *Yoder,* detailed evidence of a party's failure to receive notice must be presented. In *Yoder,* the creditor presented evidence that 1) its name did not appear on the mailing matrix; 2) two other similar creditors did not receive the same notice; and 3) that there was no record of whether the creditors' address was on the labels used to mail the notice. *Yoder* involved far more than a simple claim of non-receipt.

To allow a simple denial of receipt, standing alone, to rebut the presumption would be to destroy the presumption entirely. There has been no "indication in other Sixth Circuit opinions that *Yoder's* categorical language on presumption will be given expansive reading. To do so ... would vitiate the effectiveness of notice given by mail and preclude the finality required for the administration of bankruptcy cases." *In re Messics,* 159 B.R. at 806.

In this case, there is no proof of non-receipt other than the affidavit of a claims supervisor. However, there is substantial evidence that Ohio Casualty had notice of the Debtors' bankruptcy prior to the final day for filing nondischargeability complaints. A July 29, 1994 letter from Ohio Casualty to Attorney Ford admits that Attorney Ford had told Ohio Casualty that Hobacks had filed a bankruptcy petition. Furthermore, Attorney Ford told Ohio Casualty in an August 5, 1994 letter that the bankruptcy petition had been filed on May 5, 1994 at 1:39 p.m. This letter was received by Ohio Casualty, it admits, on August 8, 1994. These letters are not direct proof of whether or not notice was received from the Court, but they are, however, proof that Ohio Casualty was aware of the bankruptcy action. Such actual knowledge imposes upon a creditor the obligation to make reasonable inquiry regarding the relevant bankruptcy bar dates and deadlines. *In re Cover,* 97 B.R. 375, 379 (Bkrtcy.S.D.Ohio 1989). The final date for filing nondischargeability actions was August 9, 1994. Even if the Court determined that notice was not received from the Court Clerk, Ohio Casualty would be barred because the evidence shows that it failed to act to protect its rights in a timely fashion.

In this case, the Court finds the affidavit of Ohio Casualty to be insufficient to rebut the presumption of receipt of the notice. The mere denial of receipt being the only evidence offered, the presumption of receipt stands. Thus, this Court finds that Plaintiffs' complaint was not timely and the lateness was without reasonable excuse. The Defendants' Motion to Dismiss is granted by separate Order.

***ORDER***

Motion having been made, and the Court being sufficiently advised,

IT IS HEREBY ORDERED AND ADJUDGED that the Motion To Set Aside Order Discharging Debtors filed by THE OHIO CASUALTY INSURANCE COMPANY in the above-styled action is dismissed.