## In re MONROE DISTRIBUTING, INC., Debtor.

### Bankruptcy No. 92–16915.

United States Bankruptcy Court, N.D. Ohio.

Jan. 6, 1995.

Michael D. Zaverton, Jerome Leiken, Dettelbach, Sicherman & Baumgart, L.P.A., Cleveland, OH, for the trustee.

Alan L. Melamed, Special Cleveland to the Ohio Atty. Gen., Melamed, Friedman & Key, Beachwood, OH, for State of Ohio Dept. of Taxation.

## MEMORANDUM OF OPINION

DAVID F. SNOW, Bankruptcy Judge.

On August 27, 1993, 37 days after the July 21, 1993, bar date ordered by the Court, the State of Ohio Department of Taxation (the "State") filed a proof of claim in this involuntary chapter 7 proceeding in the amount of $525,070.99 reflecting a sales tax assessment due for 1983 (the "State's Claim"). The Trustee objected to the State's Claim asserting it was filed late and therefore barred under Rule 3002(c) of the Federal Rules of Bankruptcy Procedure. The State replied that neither it nor its special Cleveland counsel, Mr. Alan Melamed, had received notice of the July 21, 1993, bar date (the "July Bar Date Notice"), and that the State's Claim could not be lawfully denied. On April 21, 1993, the Court tried the issue of the State's receipt of the July Bar Date Notice. The parties offered testimony from several witnesses relating to the July Bar Date Notice and its receipt or nonreceipt by the State. Following the trial, the parties supplemented their briefs to consider whether the State's tardily filed priority tax claim should be allowed notwithstanding its late filing under the rationale of the just decided Second Circuit case *United States v. Vecchio (In re Vecchio)*, 20 F.3d 555 (2nd Cir.1994).

The Court has concluded that it is more probable than not that the State received the July Bar Date Notice either directly or through Mr. Melamed. But even if it didn't, the Court has concluded that subjecting the State's claim to the July 21, 1993, bar date would not deprive the State of its due process rights. However, the Court has also concluded that the State's tardily filed proof of claim must be allowed under section 726(a)(1) of the Bankruptcy Code and applicable Sixth Circuit authority since it was filed prior to any distribution to creditors.

### The July Bar Date Notice

The petition commencing this involuntary chapter 7 case was filed on December 17, 1992. The order for relief was entered on February 24, 1993. On March 12, 1993, the Clerk of Court caused notice to be given to all creditors through BANS of a section 341 creditors meeting scheduled for April 12, 1993. That notice advised creditors not to file proofs of claim unless they received a notice to do so since there appeared to be no assets. This form of notice goes out in virtually all chapter 7 cases filed in Cleveland so as to avoid unnecessary filing of claims where no distribution will be made. The vast majority of all liquidation cases are no-asset cases.

On March 5, 1993, the Debtor filed schedules indicating that it in fact had substantial assets. At the first meeting of creditors on April 12, 1993, testimony indicated that there were unencumbered assets. Mr. Melamed attended that meeting. Based on the report of that meeting and advice from the Trustee the Court caused BANS to mail the July Bar Date Notice to creditors advising them that there were assets and to file claims and fixing July 21, 1993, as the bar date. A

certificate of mailing filed with the Court indicates that the July Bar Date Notice was mailed on April 26, 1993, to the State and to Mr. Melamed at the addresses used for the prior section 341 notice, which both received.

According to the parties' stipulations, 36 proofs of claim were filed by the creditors in this case by October 5, 1993. Twenty-seven of these claims were filed prior to the July 21, 1993, bar date. Nine, including the State's Claim, were filed after the July 21 bar date. Four of these nine claims, however, were duplicates of prior timely claims. One other post-July 21 proof of claim was filed on forms included with the July Bar Date Notice. Therefore, the parties agree that only four claims, including the State's, cannot be conclusively tied to the July Bar Date Notice. The State argues that these other late filed claims are relevant because they suggest that creditors other than the State failed to receive the July Bar Date Notice but instead received a subsequent notice of a later bar date.

The State was able to make this argument because the Clerk caused BANS to mail a second bar date notice to creditors on August 3, 1993. The second notice resulted from a mistake made by the Trustee. Although the State's proof of claim was filed prior to the second bar date in October, 1993, the State did not assert that the second bar date notice was valid or that it relied on that notice in postponing mailing its proof of claim. There could in fact be no such reliance; the bar date had expired on July 21, 1993, thirteen days before the mistaken second notice went out to creditors.

Neither party introduced any evidence at trial shedding further light on the reason that the three claims, other than the State's, were filed late. Therefore the Court can only speculate as to the reason for these three late filings. They could, as the State suggests, reflect instances where the creditors failed to receive the July Bar Date Notice. On the other hand, they could reflect, as the Trustee suggests, inattention by some creditors to the July Bar Date Notice or their belated decision to file.

It is undisputed, however, that the July Bar Date Notice was duly mailed to the State and to Mr. Melamed and that neither notice was returned to the Clerk as undelivered. The due mailing of the July Bar Date Notice to the State and to Mr. Melamed is established by the certificate of the BANS clerk filed with the court. This certificate shows the same address as those filed in connection with other notices in this case which were received both by the State and by Mr. Melamed. The State did not impeach this certificate. The Court is entitled to rely upon this certificate that the July Bar Date Notice was duly mailed to the State and Mr. Melamed.

Notwithstanding such mailing, the State attempted to establish nonreceipt by showing that its internal procedures dealing with the receipt and processing of bankruptcy court notices made it highly unlikely that the July Bar Date Notice was received by it. In fact, however, the procedures described do not rule out the possibility that the July Bar Date Notice was received by the State, nor are those procedures relevant to Mr. Melamed's receipt of the July Bar Date Notice.

The State's argument is, in effect, based on four propositions: first, that its mail procedures were such that if delivered by the United States Postal Service the July Bar Date Notice would have been properly delivered to its Office of Administrative Counsel; second, that the State had in its files no hard copy of the July Bar Date Notice; third, that the State did not file a claim within the period and it would have done so had that notice been received; and finally, that its computer record of the case shows only the October bar date specified in the second mistaken bar date notice. But unfortunately for the State's case, its evidence is equally consistent with the possibility that the July Bar Date Notice was received, but that the State's sales tax division failed to respond by the June 14, 1993, date set by the Office of Administrative Counsel and that the entry of the July 21 bar date in the computer was superseded by entry of the October bar date when the second bar date notice was received. This scenario appears probable since it is the only explanation that accounts for all of the dates which appear in the State's computer records.

But even if it were concluded that it is more likely than not that the State did not receive the July Bar Date Notice at its Columbus office, its due process argument also requires the Court to conclude that Mr. Melamed did not receive that notice as well. In testimony and affidavit Mr. Melamed said that he had no recollection of receiving the July Bar Date Notice and that a review of his office files did not turn up a copy. Although his office procedures were not described, his argument of nonreceipt appears based on the assumption that he, or his staff, would have filed the notice in the case file. Granting this assumption, his testimony did not rule out the possibility that the notice was simply lost or misfiled. This possibility was enhanced by statements from Mr. Melamed and the State's other witnesses that Mr. Melamed had nothing to do with the State's claims filing procedure, that his responsibilities were to the Office of the Ohio Attorney General, and that until this case he had no contact with the State's Department of Administrative Counsel, which is responsible for filing proofs of claim on behalf of the State. Based on the evidence the Court also concludes that it is more likely that the July Bar Date Notice somehow went astray after it was received by Mr. Melamed than that it was never received at all.

The State appears to contend, however, that the Sixth Circuit's opinion in *In re Yoder Co.,* 758 F.2d 1114 (6th Cir.1985), precludes this Court from making such a probability assessment, however sensible. The *Yoder* opinion does have language which, if read out of the context of the facts of the case, could support the conclusion that a court should find nonreceipt anytime the creditor denies receipt and trustee's only proof is that the notice was mailed to the creditor. But the facts in *Yoder* reveal that there was a real question as to whether the bar date notice was in fact mailed to the creditor. It was uncertain as to whether the creditor's name even appeared on the matrix used to prepare the notice. There is no such uncertainty about the mailing of the July Bar Date Notice to the State and Mr. Melamed. Moreover, the State's own evidence suggests that the notice was received.

In this case the Court must weigh the likelihood that two notices which were properly addressed, stamped, and deposited in the mail were in fact not received by Mr. Melamed and the State. One of the elements in that probability equation was the likelihood of misdelivery, or failure to deliver, by the post office. No evidence was presented on this question. Although mistakes do occur and mail does go astray, the mail does in the vast majority of cases reach its intended destination. This conclusion reflects the determination in the Federal Rules of Bankruptcy Procedure that first class mail is a satisfactory way to provide notice in bankruptcy cases. *See* Advisory Committee Note to subdivision (b) of Rule 7004 of the Federal Rules of Bankruptcy Procedure. Common sense suggests that the possibility that two notices mailed to different parties at their different but correct addresses both went astray without either notice being returned to the Clerk is vanishingly small.

### Due Process

But even if this conclusion is wrong, the Court finds the State's due process arguments misdirected. The State says that unless it received the July Bar Date Notice directly or through Mr. Melamed, denial of its claim would violate its due process rights. However, the principal authorities cited by the State, *New York v. New York N.H. & H.R. Co.,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953) and *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), do not support its argument.

Both cases dealt with situations where notice was given only by publication. In *Mullane* the court held that notice by publication to beneficiaries of a trust did not afford them due process where the trustee knew their names and addresses. In *City of New York* the plaintiff knew that the city had a lien but failed to make any effort to notify it of the proceeding that would void the lien except by publication. These cases hold that notice solely by publication does not provide due process to a party whose name and address is known to the other party, that some method better designed to actually reach the par-

ty is constitutionally required. These cases do not hold, or even suggest, that notice by first class mail does not meet this requirement. The question of due process goes to the method selected to give notice, not to whether that method was in fact successful in a particular instance.

■ Contrary to the State's mischaracterization of the *Yoder* decision, *In re Yoder*, *supra*, does not support the State's position. The issue in *Yoder* was whether the creditor's late filing of a proof of claim constituted excusable neglect where the creditor had not received the bar date notice. Clearly, innocent ignorance of a bar date would constitute excusable neglect. *See Pioneer Investment Services Co. v. Brunswick Assoc. Ltd. Partnership,* —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). *Yoder* did not decide whether or not a duly mailed bar date notice would have been effective even though not received. Moreover, this Court need not decide that question in the abstract. Under the facts of this case denial of the State's claim because of its tardy filing would not deprive it of due process.

The State was on notice that it would need to file a claim even if it failed to receive the July Bar Date Notice. The State not only had notice of the case; it was one of the most active participants. Prior to the bankruptcy filing the State and the Debtor were apparently attempting to settle the State's claim, presumably on the assumption that the Debtor had assets to pay a settlement. The State, through Mr. Melamed, was one of two creditors that participated in the creditors meeting where the Trustee made clear that the Debtor did in fact have assets despite the no-asset notice. Therefore, the State knew that the no-asset notice was inaccurate, and that it would need to file a proof of claim.

*Late–Filed Priority Claims*

■ It appears however that the State's priority claim should be allowed despite its unexcused failure to comply with the July bar date. Section 726 of the Bankruptcy Code, as in effect for this case, specifies the order of distribution of property of the estate to claimants as follows:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title;

(2) second, in payment of any allowed unsecured claim other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—

(A) timely filed under section 501(a) of this title;

(B) timely filed under section 501(b) or 501(c) of this title; or

(C) tardily filed under section 501(a) of this title, if—

(i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and

(ii) proof of such claim is filed in time to permit payment of such claim;

(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title other than a claim of the kind specified in paragraph (2)(C) of this subsection;

(4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;

(5) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection; and

(6) sixth, to the debtor.

Section 726(a)(1) provides for payment first to priority claimants and does not differentiate between timely filed or tardily filed priority claims. On the other hand, sections 726(a)(2) and (3) provide separate and different treatment for timely filed and tardily

filed unsecured claims depending on the circumstances.

In *United States v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087 (6th Cir.1990), the Sixth Circuit focused on this disparity in treatment in section 726 and held that the IRS priority claim should be paid under section 726(a)(1) notwithstanding the fact that it was filed after the claims bar date. The Court said:

> The language of section 726 does not itself bar tardily filed priority claims. Subsection (a)(1) merely provides that the order of distribution of priority claims will be the order specified in section 507. This subsection makes no distinction between tardily filed and timely filed priority claims or between tardily filed claims where the creditor had notice or had no notice.... There are valid reasons for permitting all tardily filed priority claims to be paid whether or not the creditor had notice.... Congress has chosen to place certain taxes in the privileged category.... Since their priority is set in the statute, it is reasonable that priority is more important than whether they were tardily filed either because they had received no notice of the bankruptcy or for some other reason.

*Cardinal*, 916 F.2d at 1091. But in *Cardinal* the IRS was not notified of the bankruptcy case and the court thought it unfair to cut off the IRS claim. The court observed:

> Due process and equitable concerns require that when a creditor does not have notice or actual knowledge of a bankruptcy, the creditor must be permitted to file tardily when the creditor does so promptly after learning of the bankruptcy.

*Cardinal*, 916 F.2d at 1089. *Cardinal* could be read, therefore, to state two separate and independent grounds for allowing late filed priority claims—that priority claims should be allowed under section 726 despite late filing and/or that late filed claims should be allowed where the claimant lacked notice or knowledge of the bankruptcy case.

In *IRS v. Century Boat Co. (In re Century Boat Co.)*, 986 F.2d 154 (6th Cir.1993), the Sixth Circuit appeared to limit the *Cardinal* holding to cases where the priority claimant was not notified of the bankruptcy case:

> Cardinal Mine Supply did not establish the rule that a priority creditor who files an untimely proof of claim because it did not receive notice of the bankruptcy will always receive priority distribution despite the untimely filing. We simply decided then, and reaffirm today, the principle that a priority creditor who fails to receive notice of the bankruptcy and consequently files an untimely proof of claim is not barred from receiving priority distribution as a matter of law. Generally, every creditor will adhere to the timing requirements established in Bankruptcy Rule 3002. Cardinal Mine Supply established a narrow exception for priority creditors who lack notice of the bankruptcy.

986 F.2d at 158.

Many of the cases decided in the Sixth Circuit after *Century Boat* interpreted it to limit *Cardinal* to situations where the creditor lacked notice or knowledge of the bankruptcy. *Gullatt v. United States (In re Gullatt)*, 169 B.R. 385 (M.D.Tenn.1994); *United States v. Roberts (In re Larry Merritt Co.)*, 169 B.R. 141 (E.D.Tenn.1994); *In re Messics*, 159 B.R. 803 (Bankr.N.D.Ohio 1993); *In re Zimmerman*, 156 B.R. 192 (W.D.Mich.1993) (*en banc*).

Neither *Cardinal* nor *Century Boat* suggested that other late filed bankruptcy claims were allowable or that Rule 3002, which has generally been interpreted to preclude allowance of late filed claims, was invalid. Rule 3002 provides in relevant part:

> *(a) Necessity for Filing.* An unsecured creditor or an equity security holder must file a proof of claim or interest in accordance with this rule for the claim or interest to be allowed, except as provided in Rules 1019(3), 3003, 3004 and 3005....
>
> *(c) Time for Filing.* In a chapter 7 liquidation, chapter 12 family farmer's debt adjustment, or chapter 13 individual's debt adjustment case, a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the Code....

In 1992, however, the Minnesota bankruptcy judges sitting *en banc* held that Rule 3002, if interpreted to disallow late filed claims, was inconsistent with the Bankruptcy

Code. *In re Hausladen,* 146 B.R. 557 (Bankr.D.Minn.1992). *Hausladen* was a chapter 13 case. Although the opinion cited section 726(a) in support of its conclusion, it focused primarily on section 502 of the Code as in effect for both this case and *Hausladen.* Section 502(a) provides generally that a claim is allowed unless it falls within one of eight specific categories enumerated in section 502(b) of the Code. Late filing is not one of the enumerated categories.

**502 Allowance of claims or interests.**

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;

(2) such claim is for unmatured interest;

(3) if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property;

(4) if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services;

(5) such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5) of this title;

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—

(i) the date of the filing of the petition; and

(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates;

(7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claims exceeds—

(A) the compensation provided by such contract, without acceleration, for one year following the earlier of—

(i) the date of the filing of the petition; or

(ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus

(B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates; or

(8) such claim results from a reduction, due to late payment, in the amount of an otherwise applicable credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor.

The cases since *Hausladen* have split on the question of whether Rule 3002 can preclude late filed claims from being allowed under section 502. In another chapter 13 case the bankruptcy judges for the Western District of Michigan sitting *en banc* concluded that the time for filing proofs of claim, and the effect of tardy filing, were intentionally excluded from the Bankruptcy Code. *In re Zimmerman, supra.* The *Zimmerman* court held that the Code draftsmen had structured the Code so that matters related to claim filing, including applicable filing periods and the effect of failure to file, were procedural rather than substantive and, therefore, to be relegated to the Bankruptcy Rules without any intent of changing the

result under the Bankruptcy Act which expressly disallowed late filed claims. From this perspective Rule 3002 simply mandated that timely filing was a condition precedent to the allowance of claims under section 502, and in no sense conflicted with section 502.

In 1994, however, the Second and Ninth Circuits weighed into the *Hausladen–Zimmerman* dispute on the side of *Hausladen*. *United States v. Vecchio (In re Vecchio)*, 20 F.3d 555 (2nd Cir.1994); *United States v. Towers (In re Pacific Atlantic Trading Co.)*, 33 F.3d 1064 (9th Cir.1994). Both cases involved late filed priority claims filed by the IRS in chapter 7 proceedings. Although both decisions cited and relied upon section 726, both generalized their holdings beyond chapter 7 and priority claims; both held that Bankruptcy Rule 3002 was in conflict with section 502 of the Code and that late filed claims were entitled to participate equally with timely filed claims.

Both cases cited *Cardinal* and *Century Boat* as primary support for their conclusions without mentioning that neither Sixth Circuit case discussed allowance of any late filed claims except priority claims in chapter 7 nor discussed or suggested the possibility that Rule 3002 was invalid. Moreover, neither *Vecchio* nor *Pacific Atlantic Trading Co.* made any apparent effort to justify their conclusions in terms of the legislative history of the Code or the operation of the bankruptcy system. Instead both were satisfied to rely on what they discerned as the plain meaning of section 502.

It is possible that the Sixth Circuit will follow its sister circuits down the same path. But this seems by no means assured. The lower courts from this circuit, particularly *Gullatt* and *Zimmerman*, put forward persuasively and convincingly the analytic, historic, and practical reasons for rejecting the sweeping invalidation of Rule 3002 that *Vecchio* and *Pacific Atlantic Trading* prescribe. Certainly *Cardinal*, even if contrary to *Century Boat* it is read to allow late filed priority claims under section 726(a)(1), does not, as noted previously, suggest a blanket invalidation of Rule 3002.

*Gullatt* and *Zimmerman* were both chapter 13 cases and did not need to deal directly with the language of section 726 which applies only in chapter 7. As noted, that section specifically considers the treatment of late filed unsecured claims and allows them or subordinates them depending upon whether the claimant had notice or knowledge of the case and whether the claim was filed in time to be paid. Except for the Supreme Court's admonition in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), that Congress does not make major changes in the bankruptcy law without disclosing the intention to do so and except for the procedural hurdle erected in Rule 3002 to bar late filed claims, the most natural and plausible interpretation of section 726 is to allow late filed priority claims.

*Cardinal* and *Century Boat* make clear that the Sixth Circuit would invalidate Rule 3002's bar to late filed priority claims to the extent that its application would deny the claimant due process. Both cases held that despite Rule 3002 late filed priority claims could be allowed where the claimant lacked notice and knowledge of the bankruptcy case in time to make a timely filing. *Vecchio* and *Pacific Atlantic Trading Co.* are correct in reading *Cardinal* to justify allowance of late filed priority claims under section 726 notwithstanding Rule 3002. There are, as *Cardinal* says, cogent policy reasons why Congress might have chosen in section 726 to give more leeway to priority claimants and, to that extent, to depart from the Bankruptcy Act. Although this intent to depart from the Act in respect of priority claims is not clearly spelled out in the Code or its legislative history, it is probably sufficiently suggested in the structure of 726 to meet the *Dewsnup* test. Therefore, whether or not the Sixth Circuit would follow the Second and Ninth Circuits in holding that late filing was not a ground for disallowing any claim, it does seem very likely that it would allow the State's late filed priority claim in this case. This possibility was substantially enhanced by the recent amendments to the Bankruptcy Code.

On October 22, 1994, the Bankruptcy Reform Act of 1994, H.R. 5116, was signed into law by the President as Pub.L. No. 103–394 (the "1994 Act"). The 1994 Act amended section 726(a)(1) of the Bankruptcy Code to provide expressly for payment of late filed priority claims in liquidation cases provided

only that the proof of claim was filed "before the date on which the trustee commences distribution." Pub.Law No. 103–394, § 213(b). This proviso, if not inspired by *Cardinal* and *Century Boat,* certainly reflects the Sixth Circuit's approach.

> Not every priority creditor, however, may invoke the holding in Cardinal Mine Supply. At a minimum, the creditor must file its proof of claim before the trustee makes any distribution from the estate and before the bankruptcy court closes the estate. *Cf.* 11 U.S.C. § 726(a)(2)(C).

*Century Boat,* 986 F.2d at 158. Although the 1994 Act does not apply to this case it certainly reinforces the view that Congress intended that section 726 as originally drafted would allow late filed priority claims in chapter 7 cases.[1]

In view of the language in *Cardinal,* the decisions in *Vecchio* and *Pacific Atlantic Trading Co.* and the changes to section 726 made by the 1994 Act, this Court is persuaded that the State's claim should be allowed notwithstanding the State's late filing of its proof of claim.

---

1. The 1994 Act mooted the issue of whether section 502 is inconsistent with Rule 3002(c) by adding a new subsection 9 to section 502(b) of the Bankruptcy Code which expressly disallows late filed claims except priority claims allowed under section 726(a). Pub.Law No. 103–394, § 213(a)(3). This amendment supports the conclusion in *Zimmerman, Gullatt,* and *Larry Merritt* that Congress did not intend the Bankruptcy Code to change the prohibition in the Bankruptcy Act to the allowance of late filed claims generally.