In re Connie L. and Sandra K. GULLATT, Debtors.

Connie L. and Sandra K. GULLATT, Appellants,

v.

UNITED STATES of America, Appellee.

No. 3:94–0229.

United States District Court,
M.D. Tennessee,
Nashville Division.

July 7, 1994.

Michael James Passino, Passino & Minton, Nashville, TN, for appellants.

Richard Fox Clippard, Office of the U.S. Atty., Nashville, TN, for appellee.

### MEMORANDUM

WISEMAN, District Judge.

This is an appeal from the bankruptcy court's ruling that a creditor's tardily filed claim is allowable in a Chapter 13 bankruptcy case, 164 B.R. 279. This court reverses the bankruptcy court and holds that the tardily filed claims of Chapter 13 creditors are not allowable.

### I.

Connie and Sandra Gullatt filed for Chapter 13 bankruptcy on February 11, 1993. Pursuant to Rule 3002 of the Federal Rules of Bankruptcy Procedure, creditors' proofs of claims were due before June 16, 1993. Despite receiving proper notice of the bankruptcy, the Veterans Administration failed to apply for the time extension available to government entities through Rule 3002(c)(1). The Administration did not file its $13,966.95 claim until August 16, 1993, three months late. The Veterans Administration's explanation for its tardiness was that they lack adequate manpower to move for additional time every time they receive a bankruptcy notice. Ruling on the trustee's objection to the filing of this late claim, the bankruptcy court held that late filing does not require disallowance.

Judge Keith Lundin agreed with a prior opinion of Chief Judge George Paine of this district, and both cited with approval the reasoning and holding of *In re Hausladen*, 146 B.R. 557, 558–59 (Bankr.D.Minn.1992) (en banc). Finding Bankruptcy Rule 3002 to be inconsistent with the Bankruptcy Code, they found the Rule to be "not effective."

### II.

### A.

██ Rule 3002(a) states that an unsecured creditor "*must* file a proof of claim or interest in accordance with this rule for the claim or interest to be allowed." (emphasis added). The Rule then states in subsection (c) that such proof "*shall* be filed within 90 days after the first date set for the meeting of the creditors." (emphasis added). The language of Rule 3002 is unambiguous and this court must apply the "ordinary, contemporary, common meaning" of this language, *See Pioneer Inv. Services v. Brunswick Associates,* —— U.S. ——, ——, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993), unless there is an irreconcilable conflict with the enabling legislation or the Constitution.

The *Hausladen* court disagrees with this Court's reading of the plain language of Rule 3002, asserting that the Rule does not "explicitly say but impl[ies] that filing within the prescribed period is a prerequisite to allowance." 146 B.R. at 559. *Hausladen* "explains" that this and other courts' "erroneous reading [of the Rule] arose when the drafters of the new Rule 3002 hastefully copied the substance of old Rule 302 without paying any attention to the major change in the underlying statute." *Id.* Contrary to *Hausladen*'s characterization of the Advisory Rules Committee consideration of this Rule as hasty, the Federal Rules of Bankruptcy Procedure were scrutinized by the Committee "line by line, word for word as the rules proceeded through several drafts." Letter from Judge Ruggero J. Aldisert, Chairman of the Advisory Committee on Bankruptcy Rules transmitting the Rules to Judge Edward T. Gignoux, Chairman of the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States (Aug. 9, 1982) (*reprinted in* Appendix 1 *Collier on Bankruptcy*, p. 1276 (Lawrence P. King ed., 15th ed. 1994)). This scrutiny included the input of judges, lawyers, law professors, and governmental agencies from across the country. *Id.* The Rules were finally recommended by the Judicial Conference of the United States and transmitted to Congress

with the express approval of the United States Supreme Court. After three months time in which Congress could act to change the Rules if they saw fit, the Bankruptcy Rules took effect on August 1, 1983. Following the enactment of Pub.L. 98–353, on July 10, 1984, wherein Congress responded to the decision of *Northern Pipeline*, the Advisory Committee on the Bankruptcy Rules minutely re-examined the Rules to conform them to the new jurisdictional scheme. Again public hearings were held at various places across the country, the Rules as amended were submitted to the Rules and Practice Committee of the Judicial Conference, the Supreme Court, and to the Congress. No changes were made and the Revised Rules took effect August 1, 1987.

### B.

The "major change in the underlying statute" to which *Hausladen* refers is the relocation from the Bankruptcy Code to the Bankruptcy Rules of the provision disallowing tardy claims. Under the old Bankruptcy Act, § 57n disallowed late filed claims. Under the new Bankruptcy Code, §§ 501 and 502 do not specifically bar allowance of creditors' late filed claims; instead, late claims are disallowed through the procedural mechanism of Rule 3002. *In re Zimmerman*, 156 B.R. 192, 197 (Bankr.W.D.Mich.1993) (en banc).

*Hausladen*'s conclusion that §§ 501 and 502 "explicitly" require courts to allow late claims, 146 B.R. at 560, is based upon the following reasoning. Section 502 provides:

Allowance of claims or interests.

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.

(b) ... if such objection to a claim is made, the court, after notice and a hearing ... shall allow such claim ... except to the extent that—[eight exceptions which do not include late filing.]

Because late filing is not listed as an exception under § 502(b), *Hausladen* concludes that late filed claims must be allowed. *Id.* at 599–60.

What this analysis ignores is that proper filing of a claim under § 501 is a condition precedent to consideration under § 502. *Zimmerman*, 156 B.R. at 195. Section 502(a) refers to a claim "proof of which is filed under section 501"; section 502(b) instructs a court to "allow such claim" if it does not come within one of the listed exceptions. If a claim is not properly filed under § 501, a court need not examine the exceptions set out in § 502(b).

Section 501 states *inter alia* that a creditor may file a proof of claim, and that if the creditor fails to timely file, proof of claim may be filed by other specified parties. Sections 501 and 502 are therefore consistent with Rule 3002's disallowance of late filed claims. This court agrees with *Zimmerman*'s conclusion that Rule 3002 is a procedural complement to §§ 501 and 502, rather than *Hausladen*'s conclusion that Rule 3002 is a conflicting substantive requirement. *Zimmerman*, 156 B.R. at 197; *see also In re Messics*, 159 B.R. 803 (Bankr.N.D.Ohio 1993) (siding with *Zimmerman* over *Hausladen*); *In re Parr*, 165 B.R. 677, 681–83 (Bankr. N.D.Ala.) (siding with *Zimmerman* over *Hausladen* and also citing a number of other recent supporting decisions); 8 *Collier on Bankruptcy* ¶ 3002.02[1] (Lawrence P. King ed., 15th ed. 1994) ("Rule 3002 complements §§ 501 and 502 of the Code"). *Contra Hausladen*, 146 B.R. at 557 ("section 502 and Rule 3002 are not complementary but independent").

### C.

Contrary to *Hausladen*'s reading of the legislative history, this Court finds no indication that the removal from the Code to the Rules of the provision disallowing tardy claims signalled a major change in bankruptcy law. Under the previous Bankruptcy Act, § 57(n) specifically disallowed late filed claims. Former Bankruptcy Rule 302(e) set the time limit for filing Chapter 7 and Chapter 13 claims at 6 months. *See* Advisory Committee Notes following Rule 3002(c). The Advisory Committee Notes following Rule 3002(c) make clear that the new Rule 3002(c) was simply adapted from former Rule

302(e), with the minor change in the length of time provided for filing.

As explained in *In re Bailey,* 151 B.R. 28 (Bankr.N.D.N.Y.1993), the absence of specific statutory disallowance of tardy claims did not signal a change from the previous law barring tardy claims. Rather, the legislative history of § 501 shows that specific procedural details under the Code were intentionally left for the Federal Rules of Bankruptcy Procedure: "The Rules ... will set the time limits, the form, and the procedure for filing, which will determine whether claims are timely or tardily filed." *Id.* at 31, citing H.R.Rep. No. 595 95th Cong., 1st Sess. 351 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6307; *see also* Historical and Revision Notes following 11 U.S.C. § 501. Further legislative history states that in modernizing the bankruptcy law, "nearly all procedural matters [formerly incorporated in the provisions of the Act] have been removed and left to the Rules of Bankruptcy Procedure." *Bailey,* 151 B.R. at 32, (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 449 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6405).

■ What the legislative history does not say is even more impressive than what it does. There is no indication in the legislative history that the drafters of the new Code and the new Rules intended to effect a major change in bankruptcy law by allowing late filed claims under Chapter 13. The Supreme Court has indicated its reluctance "to accept arguments that would interpret the [new bankruptcy] Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in legislative history." *In re Messics,* 159 B.R. at 809 (quoting *Dewsnup v. Timm,* — U.S. —, —, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992)). The *Messics* court indeed saw the change proposed by *Hausladen* to be a "major change" in policy:

> It is difficult to see how [Chapter 13] reorganization plans could be devised without bar dates on claims allowance. The amount a chapter 13 debtor can devote to a plan is a function not only of his projected available income, but also of the type

and number of claims against him.... Without a bar date, the debtor could not realistically anticipate receiving a discharge despite years of conscienscious payment of available income.

> Moreover, creditors could not count on dividends that might have been bargained for in formulating a plan.

*Id.* at 809. Similarly, *Zimmerman* stressed that,

> A bar date is necessary so that a reorganization plan may more easily be formulated. Furthermore, a plan can only be administered after all claims against the estate have been filed.... Calculations involving plan distributions would be extremely difficult even if late claims were paid less than other claims because late claims would still be taking something away from the timely filed claims. The debtor and all timely filing creditors benefit from the claims bar date because the case can be administered much more efficiently. On the other hand, no injustice results by barring late claims of unsecured creditors who have timely notice of the bar date.

*Zimmerman,* 156 B.R. at 199. No court has pointed to any legislative history indicating that Congress intended to change the old rule of disallowing the tardily filed claims of Chapter 13 creditors.

### D.

Judge Lundin argues that interpreting Rule 3002 to bar late filed claims under Chapter 13 would be inconsistent with a number of Code provisions. Relying in part upon previous opinions, and presenting a number of novel arguments, Judge Lundin asserts that this Court's interpretation would be inconsistent with 11 U.S.C. §§ 726, 1325, 501(b) and (c), and 506(d)(2). To the contrary, this Court concludes that these sections are consistent with the proposition that late filed creditor claims are generally disallowed.

### 1.

The clearest potential conflict is between Rule 3002 and 11 U.S.C. § 726. Sections 726(a)(2)(C) and (a)(3) refer to "allowed" claims which are "tardily filed." This lan-

guage implies that a tardily filed claim may be allowed in some circumstances. Although §§ 726(a)(2)(C) and (a)(3) specify the circumstances in which such claims are allowed, some courts, including *Hausladen* and two bankruptcy judges of this district, have read § 726 to bring into question the general principle that tardy claims are not allowed.

First it should be noted that the legislative history indicates that § 726 "is the general distribution section for liquidation [Chapter 7] cases." Notes of the Committee of the Judiciary, Senate Report No. 95–989. Since this is a Chapter 13 case, § 726 does not apply. Courts that have relied upon § 726 in interpreting §§ 501 and 502, and Rule 3002 cite § 726 only as an indication that "allowed claims" are not limited to timely filed claims. This Court does not, however, read § 726 to indicate that the general rule barring late filed claims has been abandoned.

■ The primary purpose of § 726(a)(2)(C) is to determine the priority of claims filed late because the creditor did not receive adequate notice. The due process clause and general principles of equity insure that a claim will not be disallowed for tardiness if the creditor did not receive adequate notice. *See United States v. Cardinal Mine Supply,* 916 F.2d 1087, 1089, 1090–92 (6th Cir.1990). Thus, § 726(a)(2)(C) merely recognizes an existing exception to the timely filing requirement, and specifies the priority of claims filed late due to inadequate notice.

Similarly, the history of § 726(a)(3) indicates that it merely codifies an equitable exception to the general rule that late filed claims shall be barred; it does not indicate that the general rule has been abandoned. The allowance under the new Code of tardily filed claims under § 726(a)(3) does not represent a significant change in congressional intent concerning allowance of tardily filed claims. *See 4 Collier on Bankruptcy* ¶ 726.-02[3], at 726–9 (Lawrence P. King ed., 15th ed. 1994). Under the old Bankruptcy Act, § 57n's bar date was very strict, and many courts in the first part of this century used their equitable powers to mitigate its harsh effects. *See generally 3 Collier on Bankruptcy,* ¶ 57.27 (James W. Moore & Lawrence P. King, eds., 14th ed. 1977). Courts

did not, for example, hold the government to the bar date. *Id.* at ¶ 57.01[2.14] & ¶ 57.30. Some courts also felt it inequitable to allow a "surplus" in the bankruptcy estate to be returned to the bankrupt debtor if there were late filing creditors on record. *Id.* at ¶ 57.33.

Responding to these equitable concerns, Congress in 1938 provided the government the option of filing for a time extension, *id.* at ¶ 57.01[2.14] & ¶ 57.26[3], and allowed any surplus remaining in the bankruptcy estate after payment to timely filing creditors to be paid to tardily filing creditors rather than returned to the debtor. *Id.* at ¶ 57.33. Thus, congressional intent in 1938 was clear:

> In allowing for an extension of time to file government tax claims, and in allowing the belated filing of proofs in cases where there is a surplus after all the other creditors have been paid in full, the Act unmistakably implies that under no circumstances other than those specifically referred to in the statute may a court admit a claim to untimely proof, but that it is under a duty to disallow it, with no power to substitute equitable considerations for the manifest intent of Congress.

*Id.* at ¶ 57.27[2].

The Act of 1938 disallowed all late claims except in the two specifically mentioned circumstances. Those two circumstances are still recognized in the law today. Rule 3002(C)(1) is consistent with Congress' 1938 intent to allow government to file for a time extension. And section 726(a)(3) is consistent with Congress' 1938 intent that surplus property should be distributed to timely claim filers ahead of tardy claim filers, and to tardy claim filers ahead of the debtor. Section 726(a)(3) does not, therefore, represent any significant change from prior law, 4 *Collier on Bankruptcy* ¶ 726.02[3], at 726–9 (15th ed. 1994), and is not evidence of any change in congressional intent. Section 726(a)(3) codifies an exception to the bar date now contained in Rule 3002, and does not call into question the general rule that late filed creditor claims are disallowed.

2.

Judge Lundin also argues that this Court's interpretation of Rule 3002 is inconsistent

with 11 U.S.C. § 1325. Section 1325 states that the value of property distributed under a Chapter 13 plan "on account of each allowed unsecured claim" must be at least as much as would be paid on "such claim" under a Chapter 7 distribution. Under Chapter 7, a late filer may have distribution rights to surplus property under § 726(a)(3).[1] Allowing a late filer to recover under Chapter 7 but not under Chapter 13 would, the argument goes, violate § 1325.

■ The answer to this argument is that the meaning of "allowed claim" is somewhat different under Chapter 7 and Chapter 13. Section 726(a)(3) creates an exception to the rule that late filed claims are disallowed. The § 726(a)(3) exception for late filed claims to surplus property does not apply in the Chapter 13 context because the concept of "surplus property" does not apply to Chapter 13 plans.

Section 1325 is concerned with Chapter 13 distribution plans, and the phrase "allowed unsecured claim" refers to a claim allowed under Chapter 13. The phrase "such claim" likewise refers to claims that are allowed under Chapter 13. Section 1325 requires a court first to examine whether a given claim is allowed under Chapter 13, and then to compare what the creditor will receive on that claim under the distribution plan with what the creditor would receive on that claim under a Chapter 7 distribution. Late filed claims are not allowed under Chapter 13, so they need not be compared with late filed claims under Chapter 7.

Further, § 1325 only makes sense if one assumes that tardy claims that are allowed under § 726(a)(3) are not allowed under § 1325 and Chapter 13. Section 1325 asks courts to compare what a creditor will receive under the proposed reorganization plan with what the creditor would receive under Chapter 7. When examining timely filed claims this is easily done—the Court looks at what a creditor is going to receive under the

plan and compares it to what the creditor would have received if the debtor's present assets were disbursed under Chapter 7. Judge Lundin's interpretation would, however, require courts to compare what late filers would receive under a proposed distribution plan with what they would receive under Chapter 7.

This comparison is impossible to make, because there is no way to predict how much a late filer would recover under Chapter 7 without knowing how many late filers there will be and how much they will claim. In a situation in which payment of all timely claims would leave a surplus under Chapter 7, late filers would divide the surplus. The only way to insure that late filers would not receive more under Chapter 7 than under a given Chapter 13 distribution plan would be to provide in the plan that all untimely claims are to be paid in full. This is because it is always possible that a single late filer would file under a Chapter 7 distribution and that there would be enough surplus funds to fully satisfy the claim.

When there would be no surplus after a Chapter 7 distribution, disallowing late filed claims under a Chapter 13 plan would not violate § 1325. As shown above, when there would be a surplus under a Chapter 7 distribution, a Chapter 13 plan would have to provide that all late filed claims shall be paid in full. Under these circumstances, there is little incentive to file a claim on time; and of course it is unfair to those creditors who do file on time if they receive less than full payment. This difficulty is only one of many that would face courts, creditors, and debtors attempting to devise Chapter 13 reorganization plans without benefit of a firm bar date. *See Messics*, 159 B.R. at 809; *Zimmerman*, 156 B.R. at 199.

3.

Judge Lundin also argues that "[s]ections 501(b) and (c) have vitality only if untimely filed claims are allowable." Sections 501(b) and (c) permit the debtor, the trustee, or a

---

1. Creditors who file late due to inadequate notice have a valid claim under Chapter 7 or Chapter 13. *See Cardinal Mine Supply*, 916 F.2d at 1089 ("Due process and equitable concerns require that when a creditor does not have notice or actual knowledge of a bankruptcy, the creditor

must be permitted to file tardily when the creditor does so promptly after learning of the bankruptcy.") The allowance of late filed claims under § 726(a)(2)(3) does not, therefore, even arguably conflict with Rule 3002 in the context of a § 1325 determination.

co-debtor to file a proof of claim on behalf of the creditor if the creditor "does not timely file a proof of such creditor's claim." Judge Lundin argues that the power to file a proof of claim when the creditor has failed to timely file is meaningless if untimely claims are disallowed under Rule 3002.

This argument fails to recognize that Rule 3002(a) sets out exceptions to the general rule that a creditor's failure to timely file results in disallowance. Two of these exceptions relate directly to filings under §§ 501(b) and (c). Rule 3002(a) states that a creditor must file a proof of claim in accordance with the rule for the claim to be allowed, "except as provided in Rules 1019(3), 3003, 3004, and 3005." Rule 3004 relates to § 501(c), and provides that if a creditor fails to timely file the debtor or trustee may file in the creditor's name "within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c) or 3003(c)." Rule 3005 relates to § 501(b), and provides that if a creditor does not timely file a co-debtor may file a proof of claim in the creditor's name "within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c) or 3003(c)." Rule 3002 does not, therefore, require a court to disallow claims filed under §§ 501(b) and (c) if those claims are filed within the time provided by Rules 3004 and 3005.

### 4.

Judge Lundin also argues that 11 U.S.C. § 506(d) does not make sense if late filed claims are disallowed. Section 506 provides in relevant part:

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
>
> . . .
>
> (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

Judge Lundin argues that if failure to file is an exception to the voiding power of § 506(d), but untimely filing is not, then a

lien holder with no filed proof of claim is better off than a lien holder with a late filed proof of claim.

This argument is unpersuasive because it applies equally to any claim that would be disallowed for any reason. Any lienholder whose lien secures a claim that would be disallowed is better off (with respect to the lien) not filing a claim. If this is an absurd result, it is equally absurd regardless of the basis upon which an unfiled claim would be disallowed if filed.[2]

### III.

For the forgoing reasons, the Court holds that in Chapter 13 cases Rule 3002 requires courts to disallow late filed claims. Accordingly, the judgment of the bankruptcy court is REVERSED and the case is REMANDED with instructions that an order be entered disallowing the late filed claim of the Veterans' Administration.

---

2. The result is not absurd if the primary purpose of § 506(d) is to provide lienholders notice and a hearing before a lien is voided. *See* 3 *Collier on*

*Bankruptcy*, ¶ 506.07, at 506–69 to 506–71 (15th ed. 1994).