### In re JOHNSON REHABILITATION NURSING HOME, INC., Debtor.

### Sheldon L. Solow, Trustee, Plaintiff,

### v.

### United States of America, Defendant.

**Bankruptcy No. 92 B 22116.**
**Adversary No. 98 A 01429.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

April 1, 1999.

---

Bradley S. Schmarak, Tracy L. Treger, Sachnoff & Weaver, Chicago, IL, for Plaintiff.

Stacy Hallett, Tax Division, U.S. Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM OPINION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

JACK B. SCHMETTERER, Bankruptcy Judge.

Sheldon L. Solow, Trustee in the related bankruptcy case filed under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* ("Code"), has brought this Adversary proceeding seeking equitable subordination of the late-filed priority claim of the United States Internal Revenue Service ("IRS"). The Adversary issues are before this Court on the parties' cross-motions for summary judgment. For reasons set forth below, the IRS' motion is granted and the Trustee's motion is denied.

### JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This Adversary proceeding is before the Court pursuant to 28 U.S.C. § 157 and Local Rule 2.33(A) of the United States District Court for the Northern District of Illinois. The matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

### BACKGROUND

The facts in the parties' summary judgment filings under Local Bankruptcy Rule 402(M) and (N) are uncontested.

Debtor Johnson Rehabilitation Nursing Home, Inc. ("Debtor") initiated this bankruptcy case by filing a voluntary petition for relief under Chapter 7 on October 2, 1992. A meeting of creditors under Code § 341 was held on November 17, 1992, and the bar date for filing proofs of claims in the case was set for March 22, 1993. It is undisputed that the IRS received timely notice of Debtor's bankruptcy filing and of the bar date.

On or about September 27, 1996, more than three-and-one-half years after the bar date, the IRS filed a proof of claim ("Original Claim") in the amount of $508,304.31. The Original Claim was comprised of a

secured claim of $168,076.19, a priority claim under § 507(a)(7)[1] of $278,052.41, and an unsecured claim of $62,175.71. Almost 22 months later, on or about July 15, 1998, the IRS filed an amended proof of claim ("Amended Claim") to reflect a secured claim of $22,532.82, a priority claim of $248,131.28, and an unsecured claim of $237,640.21. Although the Amended Claim reclassified portions of the indebtedness, the total amount of the IRS claim remained unchanged.

The IRS has identified the taxes comprising its claim as arising from Debtor's withholding obligations. The Trustee does not dispute that the taxes are owed or that the IRS has properly characterized a portion of the amount owed it as a priority claim.

The anticipated distribution to all creditors in this case will come to about $166,000. While the parties have not stipulated as to the amounts expected to be paid to priority claimants other than the IRS,[2] they agree that, after distributions to secured creditors and prior administrative claimants, remaining funds would be insufficient to pay in full the priority tax claims of governmental entities. If the IRS is allowed to share in the distribution from the estate on a par with other priority tax claims, the distribution to other governmental claimants will be significantly reduced and unsecured creditors will then receive no distribution from the estate.

## Information in Debtor's Bankruptcy Schedules

The schedules accompanying Debtor's bankruptcy petition listed total assets of $891,398.00 and total liabilities of $2,126,130.80. The three categories of scheduled liabilities were comprised of the following: (1) secured claims of $836,691.00; (2) unsecured priority claims of $818,394.00; and (3) unsecured nonpriority claims of $471,045.84. The IRS was named as an unsecured priority creditor holding a claim of $495,714.00. Although the initial notice to creditors stated that this was a no-asset case, creditors were later informed that payment of a dividend might be possible, and creditors wishing to share in the distribution from the estate were required to file claims before the bar date.

## Standard on Cross–Motions for Summary Judgment

Summary judgment is to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 402 (7th Cir. 1998). Where a motion for summary judgment is brought, the Court reviews the record in the light most favorable to the nonmoving party and it draws all inferences in the nonmovant's favor. *Parkins*

1. After filing of Debtor's Chapter 7 case, § 507(a)(7) was redesignated § 507(a)(8) by the Bankruptcy Reform Act of 1994. *See infra* note 3. Both before and after that amendment, the priority for those taxes enumerated in former § 507(a)(7) has been described as encompassing "allowed unsecured claims of governmental units...."

Although claims for priority taxes under § 507(a)(7) are by definition unsecured, this memorandum will simply refer to them as "priority claims." The shorter term is used to distinguish unsecured claims for priority debts under § 507 from "general unsecured claims" which have no special priority in distribution from a bankruptcy estate. *See In*

*re Rago*, 149 B.R. 882, 886 n. 4 (Bankr. N.D.Ill.1992). The terms "unsecured claims" and "unsecured creditors" will refer respectively to general unsecured claims and the holders of general unsecured claims.

2. In his complaint, the Trustee estimates that, out of available funds of $166,000, holders of secured claims and priority claims under §§ 507(a)(1) and (3) would be paid a total of $147,900. The remaining balance of $18,100 would then be distributed in payment of priority tax claims under § 507(a)(7). Amended Complaint ("Cmplt."), ¶ 16. The timely filed claims of other governmental entities are alleged to total $17,900. Cmplt., ¶ 15.

*v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1032 (7th Cir.1998).

On cross-motions for summary judgment, each motion is considered separately. *Eisenberg Bros., Inc. v. Clear Shield Nat'l, Inc. (In re Envirodyne Industries, Inc.)*, 214 B.R. 338, 345 (N.D.Ill.1997). Thus, on their respective motions, the Trustee and the IRS each bear the burden of demonstrating that judgment should be entered in his and its favor. *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 294 (7th Cir.1998). All inferences are construed in favor of the party against whom the motion under consideration is made. *Andersen v. Chrysler Corp.*, 99 F.3d 846, 856 (7th Cir.1996).

The task on a motion for summary judgment is to determine whether there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir.), *cert. denied*, 519 U.S. 1115, 117 S.Ct. 957, 136 L.Ed.2d 843 (1996). Where the material facts are not in dispute, the sole issue is whether the moving party is entitled to a judgment as a matter of law. *ANR Advance Transp. Co. v. International Bhd. of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir.1998).

### DISCUSSION

■ The priority of claims in the distribution to be made in the related Chapter 7 bankruptcy case will be determined under terms of Code § 726(a) in effect before the amendments of the Bankruptcy Reform Act of 1994 ("1994 Act").[3]

When Debtor filed in bankruptcy, § 726(a)(1) provided:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed -

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title;

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1),(3), or (4) of this subsection, proof of which is -

(A) timely filed under section 501(a) of this title;

(B) timely filed under section 501(b) or 501(c) of this title; or

(C) tardily filed under section 501(a) of this title, if -

(i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and

(ii) proof of such claim is filed in time to permit payment of such claim;

(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection;

(4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;

(5) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection; and

---

**3.** The Bankruptcy Reform Act of 1994 was enacted on and effective as of October 22, 1994. Pub.L. No. 103–394, § 702(a), 108 Stat. 4106, 4150 (1994). The amendments made by the legislation do not apply to cases commenced before the date of its enactment. *Id.*, § 702(b).

(6) sixth, to the debtor.

11 U.S.C. § 726(a) (1978).

In its present form, § 726(a)(1) provides for distribution "first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, *proof of which is timely filed under section 501 of this title or tardily filed before the date on which the trustee commences distribution under this section.*" 11 U.S.C. § 726(a)(1) (1994) (language added by the 1994 Act in italics).[4] As is made clear by the 1994 amendment, priority claims filed after the claims bar date under Fed. R. Bankr.P. 3002(c) now may share in distribution under § 726(a)(1) unless they are filed after commencement of the distribution. Before the 1994 Act, though, the statute was silent as to whether tardily filed priority claims were either to be disallowed or relegated to a lower tier in the distributional scheme under § 726(a).

In an earlier decision under § 726(a), this Court determined that the untimeliness of a filing of a proof of claim does not cause disallowance of an unsecured claim in a case commenced before the effective date of the 1994 Act. *In re Glenwood Medical Group, Inc.*, 211 B.R. 282, 289 (Bankr.N.D.Ill.1997) (finding that in a Chapter 7 case, Fed. R. Bankr.P. 3002 does not act as an absolute bar to exclude late-filed claims). Unlike the IRS's priority claim in this case, however, the claim in *Glenwood Medical Group* was a general unsecured claim. The question here is whether the IRS's untimely claim may share the status generally accorded priority claims under § 726(a)(1), or whether it must be relegated to the third priority in distribution under § 726(a)(3).

### *Majority Line of Decisions Interpreting Pre–Amendment § 726(a)(1)*

Most federal courts of appeals to consider the issue have concluded that in cases filed before the effective date of the 1994 Act, tardily filed priority claims are not as a matter of law precluded from participating in the first priority in distribution under § 726(a)(1). *Cooper v. Internal Revenue*, 167 F.3d 857 (4th Cir.1999); *Internal Revenue Service v. Davis (In re Davis)*, 81 F.3d 134, 135 (11th Cir.1996); *United States v. Towers (In re Pacific Atlantic Trading Co.)*, 33 F.3d 1064, 1066 (9th Cir. 1994); *United States v. Vecchio (In re Vecchio)*, 20 F.3d 555, 556–59 (2d Cir. 1994); *United States v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087, 1091–92 (6th Cir.1990). Among these decisions, the analysis in *Vecchio* is generally followed.

*Vecchio* made the following comparison between the statute's provisions for priority claims and general unsecured claims in reaching its conclusion that tardily filed priority claims were not excluded from § 726(a)(1):

> [T]he trustee's argument is at odds with the plain language of § 726(a). Section 726(a)(1) accords priority status to claims specified in § 507 without regard to the timeliness of their filing. In sharp contrast, subsections (a)(2) and (a)(3) of § 726 categorize nonpriority unsecured claims into those that are timely filed, those that are tardily filed where the creditor did not have proper notice of the bankruptcy, and those that are tardily filed where the creditor received proper notice of the bankruptcy. Thus, Congress plainly knew how to distinguish between timely and tardily filed claims, yet did not make that distinction for claims filed under § 507. The absence of a timeliness distinction in § 726(a)(1) strongly suggests that this subsection encompasses all priority claims whenever filed.

*Vecchio*, 20 F.3d at 557.

Looking to the structure of the statute, *Vecchio* also noted several logical problems arising from a reading of § 726(a)(1) that would deny priority status to late-filed

---

**4.** The 1994 Act also amended § 502(b)(7) to provide that a claim will be disallowed where "proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title...."

claims under § 507. For instance, § 726(a)(2) specifically excludes claims specified under subsection (a)(1), but it includes tardily filed general unsecured claims if the creditor did not have notice or actual knowledge of a bankruptcy case in time to file a proof of claim. If priority claims filed late due to lack of notice were relegated to the third tier under § 726(a)(3), the incongruous result would be that general unsecured claims would be paid ahead of similarly situated priority claims. *Id.* at 558. Finally, *Vecchio* expressed a belief that statements in the legislative history supported its conclusion that, by not enacting a framework like that under subsections (a)(2) and (a)(3) for separate classification of general unsecured claims according to the timeliness of filing, Congress intended that § 726(a)(1) encompass both timely and untimely priority claims.[5]

*Vecchio* also observed that while the Sixth Circuit had reached a similar conclusion regarding the structure of § 726(a) in *Cardinal Mine Supply,* its later decision in *Internal Revenue Service v. Century Boat Co.,* 986 F.2d 154 (6th Cir.1993), limited the priority under § 726(a)(1) to late claims of creditors lacking notice of a bankruptcy. *Id.* Although not persuaded that a similar limitation should invariably apply where a late filing priority creditor had notice of a bankruptcy, *Vecchio* acknowledged that its straightforward reading of the statute resulted in no penalty for priority creditors who, with notice of a bankruptcy, fail to file proofs of claim

within the deadline imposed by Fed. R. Bankr.P. 3002(c). *See, e.g., Vecchio,* 20 F.3d at 560 (citing *In re Rago,* 149 B.R. 882, 888–89 (Bankr.N.D.Ill.1992) "To sanction such disregard of the rules contradicts a firmly established policy of encouraging finality in the administration of claims." *Rago,* 149 B.R. at 888).

Addressing the means for dealing with potential abuse, *Vecchio* referred to the *Rago* decision in which Judge Wedoff of this District concluded that, instead of automatically refusing to allow the priority where a creditor had received timely notice of the bankruptcy, the court could consider whether the circumstances warranted exercise of its authority to equitably subordinate claims under § 510. *See Vecchio,* 20 F.3d at 560 (citing *Rago,* 149 B.R. at 889–90). *Rago* observed that the plain language of § 726(a) provides that priorities in distribution are subject to § 510. *Rago,* 149 B.R. at 889.

A review of the decisions following *Vecchio* leaves some uncertainty as to whether status under § 726(a)(1) would be automatic if the claimant had notice of the bar date. Without elaboration, several decisions simply state that tardily filed priority claims are entitled to distribution under § 726(a)(1) regardless whether the creditor had notice of the debtor's bankruptcy. *See, e.g., Davis,* 81 F.3d at 135; *United States v. Vancardo (In re Vancardo),* 182 B.R. 543, 544 (E.D.Mo.1995); *In re Monroe Distributing, Inc.,* 176 B.R. 458, 465 (Bankr.N.D.Ohio 1995).

**5.** The House and Senate reports contain the following identical language describing the provision that would become § 726(a)(1):

This section is the general distribution section for liquidation cases. It dictates the order in which distribution [is made] of property of the estate, which has usually been reduced to money by the trustee under the requirements of section 704(1).

First, property is distributed among priority claimants, as determined by section 507, and in the order prescribed by section 507. Second, distribution is to general unsecured creditors. This class excludes priority creditors and the two classes of subordinated creditors specified below. The provision is written to

permit distribution to creditors that tardily file claims if their tardiness was due to lack of notice or knowledge of the case. Though it is in the interest of the estate to encourage timely filing, when tardy filing is not the result of a failure to act by the creditor, the normal subordination penalty should not apply. Third distribution is to general unsecured creditors who tardily file. Fourth distribution is to holders of fine, penalty, forfeiture, or multiple, punitive, or exemplary damage claims. . . .

H.R.Rep. No. 95–595 at 383, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6339; S.Rep. No. 95–989 at 97, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5882–83.

On the other hand, it appears that a larger number of courts would consider whether equitable subordination of the untimely claim is appropriate. *See, e.g., In re Lee Dykas, Inc.,* 189 B.R. 1, 3 (D.R.I. 1995); *State of Illinois, Dept. of Revenue v. Raleigh (In re Stoecker),* 179 B.R. 532, 538–39 (N.D.Ill.1994); *Reitmeyer v. Kirkpatrick & Lockhart, LLP (In re American Metallurgical Products, Inc.),* 228 B.R. 146, 158 (Bankr.W.D.Pa.1998); *In re Drexel Distributors, Inc.,* No. 92 B 28459, 1996 WL 788372, at *2 (Bankr.N.D.Ill.1996); *In re M.A.P. Restaurant, Inc.,* 191 B.R. 519, 520 (Bankr.D.R.I.1996); *In re Cole,* 172 B.R. 287, 290–91 (Bankr.W.D.Mo.1994). *See also United States v. Worthington Investments, Inc. (In re Worthington Investments, Inc.),* 184 B.R. 538, 538 (S.D.Ohio 1995) (declining to punish priority creditor for filing claim one day after deadline). While finding that untimely claims were entitled to status under § 726(a)(1), the Fourth and Ninth Circuits pointed out that the question of equitable subordination was not before them. *Cooper,* 167 F.3d at 860; *Pacific Atlantic Trading Co.,* 33 F.3d at 1065, 1068.

### Decisions Denying Priority Status Under § 726(a)(1) As a Matter of Law Where a Creditor Had Notice of the Bar Date

The Fifth Circuit has disagreed with the majority interpretation of § 726(a) in a case where the IRS sought to amend its proof of claim two days after the bar date in a Chapter 13 case. *United States v. Waindel (In re Waindel),* 65 F.3d 1307 (5th Cir.1995).[6] Having upheld the lower court's conclusion that the amendment could not relate back to the filing date of the original claim, and having determined that the claim could be allowed, *Waindel* considered the priority in distribution that would have been accorded the tardily filed claim in a Chapter 7 case. In concluding that the claim was not entitled to first-tier status under § 726(a)(1), *Waindel* observed that priority unsecured claims are a species of allowed unsecured claims, and hence, facially within the language of § 726(a)(3). *Id.* at 1311. *Waindel* did not consider it illogical that late-filed priority claims might receive distribution after those tardily filed general unsecured claims provided for in § 726(a)(2)(C), since it perceived that few unsecured creditors would receive notice and file claims in time to share in that priority in any event. *Id.* *Waindel* observed that "priority claimants will almost always be on notice of the pendency of a case and thus empowered to protect their rights." *Id.*

Finally, *Waindel* concluded that the rule in *Vecchio* conflicts with the provision under § 501(c) that permits a debtor to file a proof of claim whenever a creditor does not timely file its own claim. The opinion reasoned thus:

6. Although § 103(b) makes subchapters I and II of Chapter 7 inapplicable in a case under Chapter 13, *Waindel* noted the requirement for plan confirmation that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date." 11 U.S.C. § 1325(a)(4). Because *Waindel* concluded that the late claim before it had to be allowed, it considered the effect of § 726(a) on the hypothetical distribution under § 1325(a)(4).

This opinion includes a discussion of *Waindel* because the Sixth Circuit has followed it in an unpublished decision under § 726(a) in a Chapter 7 case. *United States v. Simon (In re Burnham, Connolly, Oesterle and Henry),* 98 F.3d 1341 (Table), 1996 WL 580475 (6th Cir. 1996) (finding that where IRS had notice of bankruptcy, tardily filed priority claim would be relegated to priority under § 726(a)(3)). It should be noted, though, that not all courts would agree that § 726(a) has any relevance in a Chapter 13 case. *See, e.g.,Gullatt v. United States (In re Gullatt),* 169 B.R. 385, 390 (M.D.Tenn.1994) ("Late filed claims are not allowed under Chapter 13, so they need not be compared with late filed claims under Chapter 7."); *In re Tucker,* 174 B.R. 732, 741 (Bankr.N.D.Ill.1994). This Court does not make a finding that § 726 applies in Chapter 13 cases.

This provision was intended to allow debtors to complete the list of claims against the estate in a timely fashion and to ascertain the basis for and amounts of creditors' distributions. The particular object of this salutary provision was untimely priority claims, because of their potentially heavy impact on a case. Vecchio's analysis overlooked § 501(c) and in so doing unwittingly emasculated it.

*Id.*[7]

The *Waindel* court also expressed its frustration with large untimely claims early in the opinion, where the comment was made that questions under § 726(a) continue to arise "[b]ecause IRS apparently finds it difficult to comply with the bankruptcy rules' 90–day 'bar date' for filing proofs of claim . . . ." *Id.* at 1308.

Although *Waindel* is the only published decision by a federal court of appeals to reject *Vecchio*, the Trustee has cited several decisions where, because of timely notice of a bankruptcy, lower courts have automatically relegated untimely priority claims to a lower level in the distributional scheme under § 726(a). Two factors common to these decisions are that (1) they relegate the claim to a lower priority under § 726(a) without consideration of equitable factors, and (2) they essentially rely on policy considerations to justify the result reached. *See e.g., Internal Revenue Service v. Roberts (In re Larry Merritt*

*Co.),* 169 B.R. 141, 143 (E.D.Tenn.1994) (reasoning that *Vecchio* allows claims under § 726(a)(1) to retain their priority indefinitely; in view of policy of orderly distribution and settlement of estates, appropriate to allow untimely priority claims to be paid under § 726(a)(3)); *In re Claims Group Administrators,* 181 B.R. 329 (Bankr.E.D.Tenn.1995) (agreeing with conclusion in *Larry Merritt Co.*); *In re Sea Air Shuttle Corp.,* 168 B.R. 501, 505 (Bankr.D.P.R.1994) (late filing with notice of bankruptcy should automatically result in one-tier subordination to second priority under § 726(a)(2)); *In re Brennan,* 167 B.R. 316, 318 (Bankr.D.Mass.1993) (concluding that distribution scheme under § 726 contemplates preferential treatment of timely filed claims, with tardy claims relegated to § 726(a)(3)).

### IRS Motion for Summary Judgment on the Basis That Notice of the Bar Date Is Not a Consideration Under § 726(a)(1)

In order to rule on the motions pending before it, the Court must determine which of the two lines of decisions under § 726(a) reaches the better-reasoned result. Aligning itself with the majority line of cases, the IRS seeks a finding that its claim is entitled to priority in payment, even though the claim was tardily filed despite timely notice of Debtor's bankruptcy proceedings.

7. *Waindel*'s reliance on § 501(c) to aid in the interpretation of § 726(a) would seem misplaced, as committee reports indicate that § 501(c) was enacted for the primary purpose of enabling debtors to file proofs of claim with respect to nondischargeable debts where a creditor has not done so before the claims filing deadline in a case. "If the creditor does not file, there would be no distribution on the claim, and the debtor would have a greater debt to repay after the case is closed than if the claim were paid in part or in full in the case. . . ." H.R.Rep. No. 95–595, at 352, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6307–08, S.Rep. No. 95–989, at 61, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5847.

A filing by a debtor under § 501(c) does not necessarily resolve all questions with respect

to a priority claim, as the creditor might be allowed to amend the claim so as to prove the correct amount of the debt owed it. *See United States v. Kolstad (In re Kolstad),* 928 F.2d 171, 175 (5th Cir.), *cert. denied,* 502 U.S. 958, 112 S.Ct. 419, 116 L.Ed.2d 439 (1991). Also, contrary to the suggestion in *Waindel,* where a debtor pursues the option under § 501(c), other creditors experience the same detriment as when a late-filing creditor successfully procures priority for its own claim, since assets that might have been applied to satisfy the claims of lower-tier creditors are diminished in both scenarios. *See In re Danielson,* 981 F.2d 296, 297 (7th Cir.1992); *In re Higgins,* 29 B.R. 196, 199 (Bankr.N.D.Iowa 1983).

The decision to be made is not as clear-cut as it might first appear. As indicated in the preceding discussion, the majority line of decisions does not appear to have reached a consensus as to whether equitable subordination must be considered where a priority claimant has notice of the bar date. Since there are really two issues here, the analysis must be in two stages. At the outset, it is necessary to determine whether the majority line of cases correctly concludes that tardily filed claims are not necessarily precluded from the first distributional tier under § 726(a)(1). If the IRS prevails with respect to that issue, the next question is whether the fact of notice of the bar date in a case would alter that result.

 The starting point in this task of statutory interpretation is the Supreme Court's admonition that "[w]hen Congress amends the bankruptcy laws, it does not write 'on a clean slate.'" *Dewsnup v. Timm*, 502 U.S. 410, 419, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992). The Code is not to be read to erode past bankruptcy practice absent a clear indication that Congress intended such a departure. *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 563, 110 S.Ct. 2126, 2133, 109 L.Ed.2d 588 (1990). Here, the discussion will consider both the changes to existing practice brought about by the enactment of the Code in 1978 and the effect of the amendments of the 1994 Act.

Under the Bankruptcy Act of 1898 ("1898 Act"), tardily filed claims were not allowed unless all timely claims against an estate had been paid in full.[8] *See, e.g., In re Pigott*, 684 F.2d 239, 242–43 (3d Cir. 1982) (refusing to allow equitable exception to rule that claims be filed before the bar date). If all timely allowed claims had been paid, however, late claims would be allowed against the surplus remaining in the estate. *See, e.g., Gullatt v. United State (In re Gullatt)*, 169 B.R. 385, 389 (M.D.Tenn.1994); *In re Tucker*, 174 B.R. 732, 734–35 (Bankr.N.D.Ill.1994); *Rago*, 149 B.R. at 889 n. 10.

Viewed against this backdrop, the enactment in 1978 of the provision under § 726(a)(3) for payment of tardily filed unsecured claims would essentially continue the practice of allowing tardily filed claims against an estate after timely claims had been paid in full. On the other hand, the addition of § 726(a)(2)(C) constituted a departure from existing practice, since under the 1898 Act no untimely claims would have shared in the initial distribution of assets from an estate.

 For two reasons, it must be concluded that in cases commenced before the statute was amended in 1994, § 726(a) is better interpreted as allowing tardily filed priority claims to be accorded priority under § 726(a)(1).[9] First, *Vecchio* and its

---

**8.** Section 57(n) of the 1898 Act provided in relevant part as follows for the allowance and payment of claims against an estate:

> n. Except as otherwise provided in this Act, all claims provable under this Act, including all claims of the United States and of any State or any subdivision thereof, shall be proved and filed in the manner provided in this section. Claims which are not filed within six months after the first date set for the first meeting of creditors shall not be allowed ... When in any case all claims which have been duly allowed have been paid in full, claims not filed within the time herein above prescribed may nevertheless be filed within such time as the court may fix or for cause shown extend and, if duly proved, shall be allowed against any surplus remaining in such case.

11 U.S.C. § 93(n) (repealed 1978).

**9.** The result here does not contradict the decision in *In re De Vries Grain & Fertilizer, Inc.*, 12 F.3d 101 (7th Cir.1993), where a panel of the Seventh Circuit considered whether a request for administrative expenses under § 503(b) in a Chapter 11 case might be deemed an informal proof of claim after the case was converted to a proceeding under Chapter 7. Because it was determined that the filing did not constitute a proof of claim, the claimant was precluded from sharing in distribution from the estate, even though its claim if filed, would have been a priority expense under § 726(a)(1). The claimant in *De Vries* did not assert an entitlement to priority under § 726(a), and the court of appeals did not discuss the issue.

progeny are the better reasoned line of decisions interpreting the statute, as they base their conclusion on a sound analysis of the structure of § 726(a),while *Waindel* and the lower court decisions comprising the minority view reach their result essentially on the basis on policy considerations. Second, principles of statutory construction support that result.

■ One indication that a subsequent amendment was intended to clarify, rather than change existing law, is the existence of disagreement concerning the meaning of the statute. *United States v. Mele*, 117 F.3d 73, 75 (2d Cir.1997); *State Farm Mut. Automobile Ins. Co. v. Fielder (In re Fielder)*, 799 F.2d 656, 660 (11th Cir.1986). Where a subsequent amendment to a statute clarifies, rather than changes, existing law, the amendment is entitled to substantial weight in construing the earlier law. *United States v. Monroe*, 943 F.2d 1007, 1016 (9th Cir.1991), *cert. denied*, 503 U.S. 971, 112 S.Ct. 1585, 118 L.Ed.2d 304 (1992). Given the disagreement among decisions reached before the 1994 Act, the amendment to § 726(a)(1) must be seen to clarify Congressional intent that tardily filed priority claims be assigned the first distributional tier under § 726(a)(1).

It having been determined that the majority line of decisions correctly interprets § 726(a)(1) as it existed prior to the 1994 Act, the next question is whether timely notice of a bar date will cause tardily filed claims to lose their priority under § 726(a)(1). Consistent with the plain language of § 726(a), some decisions have found that where a creditor had notice of a bar date, principles of equitable subordination should be applied to determine whether to relegate that claim to a lower priority under § 726(a). While other decisions simply allow late claims despite notice of the bar date, no decision has found that principles of equitable subordination should not be applied if the circumstances warrant. Notably, also, when § 510(c) was enacted, the Senate Report indicated that legislators had considered, but rejected, a proposal that tax claims not be the subject of equitable subordination.[10]

■ It is concluded here that plain language of the statute, as well as the legislative history and precedent, support the conclusion that, where a tardily filing creditor has timely notice of the bar date in a case, equitable subordination of the claim should be considered. Accordingly, the IRS motion for summary judgment on its proposition that § 726(a)(1) allows first tier priority as a matter of law, despite a creditor's timely knowledge of the bar date, lacks merit. Instead, the IRS's entitlement to judgment will turn on whether it prevails on the alternative argument that the Trustee has not established a right to equitable subordination.

### Cross-Motions for Summary Judgment on the Question of Equitable Subordination

■ Code § 510(c) provides that the court may, after notice and hearing, "under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest...." 11 U.S.C. § 510(c)(1). Although Congress included no explicit criteria for equitable subordination when it enacted § 510(c), the reference to "principles of equitable subordination" in the statute indicates Congressional intent to start with the existing doctrine under the case law, leaving it to courts to develop the doctrine in the future. *United*

10. The Senate Report describing the provision that eventually became § 510(c) stated in relevant part as follows:

As originally introduced, the bill provided specifically that a tax claim may not be subordinated on equitable grounds. The bill deletes this express exception, but the effect under the amendment should be much the same in most situations since, under the judicial doctrine of equitable subordination, a tax claim would rarely be subordinated.

S. Rep. No. 95–989, at 74, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5860.

*States v. Noland*, 517 U.S. 535, 539, 116 S.Ct. 1524, 1526, 134 L.Ed.2d 748 (1996). *See also Herzog v. Leighton Holdings, Ltd. (In re Kids Creek Partners, L.P.)*, 212 B.R. 898, 927 (Bankr.N.D.Ill.1997) and cases cited.

### (1) Trustee's motion for finding that the IRS claim must be equitably subordinated to timely filed claims

The Trustee's motion for summary judgment raises the question whether, as a matter of law, tardily filed priority claims must be subordinated in a Chapter 7 case where the creditor had notice of the bar date under Fed. R. Bankr.P. 3002(c) in time to file its proof of claim.

■ One oft-cited decision on the question of equitable subordination is that of the Fifth Circuit in *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692 (5th Cir.1977). *Mobile Steel* instructed that exercise of the power of equitable subordination is appropriate only if three conditions are met: (1) the claimant has engaged in some type of inequitable conduct; (2) the misconduct has either resulted in injury to other creditors or conferred some unfair advantage on the claimant; and (3) equitable subordination of the claim is not inconsistent with provisions of the Code. *Id.* at 699–700. *See also In re Lifschultz Fast Freight*, 132 F.3d 339, 344 (7th Cir.1997) (noting that most courts have uniformly followed and applied the *Mobile Steel* test).

Looking to the requirements under *Mobile Steel*, the third element is satisfied, since it has not been shown that equitable subordination of the IRS claim is inconsistent with some other provision in the Code. Leaving the question of injury to other creditors for discussion later in this Memorandum, the first requirement under *Mobile Steel* becomes the focus of the controversy here.

As the Trustee correctly observes, the Seventh Circuit has on two occasions stated that equitable subordination no longer requires inequitable conduct by the creditor in all cases. *In re Envirodyne Industries, Inc.*, 79 F.3d 579, 581–82 (7th Cir. 1996), *cert. denied sub nom. Ryckman v. Envirodyne Industries, Inc.*, 519 U.S. 821, 117 S.Ct. 77, 136 L.Ed.2d 36 (1996); *In re Virtual Network Services Corp.*, 902 F.2d 1246, 1250 (7th Cir.1990). First, in *Virtual Network*, the court of appeals determined in a liquidating Chapter 11 case that a non-pecuniary loss tax penalty would be subordinated to the claims of other creditors that had incurred actual losses in their dealings with the debtor. *Virtual Network*, 902 F.2d at 1250. Later, in *Envirodyne*, the court subordinated certain shareholder claims on the basis that, although formally structured as debt, the claims were in substance equity interests in a target corporation. *Envirodyne*, 79 F.3d at 584. Although the Seventh Circuit subsequently clarified that its decisions in *Virtual Network* and *Envirodyne* should not be interpreted as generally authorizing "no-fault" subordination, *see Lifschultz*, 132 F.3d at 347–49, it has not ruled out the possibility that there exist other classes of claims that, by their nature, may be subordinated to those of other creditors.

The Trustee emphasizes policy considerations in support of his argument that equitable subordination is appropriate here. Thus, he argues that the IRS waited too long to collect its debt, making it unfair to shift the burden of the debt to other creditors, and that if negligent priority claimants are paid over diligent unsecured creditors, such a policy could lead to abuses and habitual late filings by governmental entities. Although the Trustee maintains that he does not seek a finding that claims must be automatically subordinated where a creditor has notice of the bar date in a case, the agreed facts in this case are extremely general in nature. There is no evidence of particular facts that would distinguish this case from others where it was determined that a late-filing creditor's knowledge of a bar date did not preclude priority status under § 726(a)(1). Because the facts presented are few and very generalized in nature, if

summary judgment were correctly granted in this case for the Trustee, it would be proper in any case where a tardily filing priority claimant had timely notice of a bar date.

The Supreme Court's ruling in *Noland* compels the conclusion that the Trustee's motion must be denied. In *Noland*, the bankruptcy court in a case converted from Chapter 11 had subordinated a postpetition noncompensatory claim tax penalty that normally would have received first priority under § 726(a)(1) due to its status as an administrative expense within the meaning of §§ 503(b)(1) and 507(a)(1). Although there had been no finding of inequitable conduct on the part of the IRS, the lower courts concurred that § 510(c) authorized subordination of that category of tax penalty claims. The Supreme Court reversed, making the following comments regarding the appropriate application of § 510(c):

> [T]he adoption in § 510(c) of "principles of equitable subordination" permits a court to make exceptions to a general rule when justified by particular facts.... But if the provision also authorized a court to conclude on a general, categorical level that tax penalties should not be treated as administrative expenses to be paid first, it would empower a court to modify the operation of the priority statute at the same level at which Congress operated when it made its characteristically general judgment to establish the hierarchy of claims in the first place. That is, the distinction between characteristic legislative and trial court functions would simply be swept away, and the statute would delegate legislative revision, not authorize equitable exception. We find such a reading improbable in the extreme.

*Noland,* 517 U.S. at 540–41, 116 S.Ct. at 1527. *See also United States v. Reorganized CF & I Fabricators of Utah, Inc.,* 518 U.S. 213, 229, 116 S.Ct. 2106, 2115, 135 L.Ed.2d 506 (1996) (categorical reordering of priorities that takes place at legislative

level of consideration is beyond scope of judicial authority to order equitable subordination under § 510(c)). Although the Sixth Circuit had indicated in its decision in *Noland* that not every tax penalty would be subordinated by its very nature, on review the Supreme Court reasoned that such would be the inevitable result of consistent applications of a rule that depended not on individual equities, but on the supposed general unfairness of satisfying "postpetition, nonpecuniary loss tax penalty claims" before the claims of general creditors of an estate. *Id.,* 517 U.S. at 541, 116 S.Ct. at 1527 (emphasis in the original).

In this proceeding, the Code is interpreted as according priority under § 726(a)(1) to both timely and tardily filed claims, subject to exception based on principles of equitable subordination. The Trustee, however, asks that the IRS's claim be relegated to a lower priority without consideration of the equities on the sole basis that the claim was filed past the bar date in Debtor's bankruptcy case. In effect, he would have subordination turn only on timeliness, and the assignment of tardily filed claims to a lower priority would be on a general, categorical level. Because that result would contravene the directives of *Noland,* the Trustee's motion for summary judgment is denied.

### (2) IRS's motion for summary judgment on the basis that the Trustee cannot establish all elements of equitable subordination

In its cross-motion for summary judgment, the IRS argues that summary judgment must be granted in its favor because the Trustee cannot establish inequitable conduct, as required under *Mobile Steel.* Since the Trustee alleges only that the IRS negligently failed to file a timely claim, the conduct complained of in this case is not the kind of intentional or culpable behavior that the term "inequitable conduct" requires.

On the other hand, *Noland* did not invalidate the Seventh Circuit's conclusion in *Virtual Network* and *Envirodyne* that inequitable conduct is only "the general rule for equitable subordination," subject to exception on the facts of particular cases. *See Lifschultz,* 132 F.3d at 349. To the contrary, *Noland* expressly noted that it "did not decide ... whether a bankruptcy court must always find creditor misconduct before a claim may be equitably subordinated." 517 U.S. at 543, 116 S.Ct. at 1528.

Although the cases under § 726(a) that actually reach the question of equitable subordination are very few, they suggest that late filing despite notice of the bar date in a case should trigger some inquiry. In the analysis of evidence in those cases, it was not presumed that a creditor's notice of a bar date makes its late filing inexcusable, since facts may reveal that the primary reason for the delay was some factor other than a lack of diligence on part of the creditor. *See In re Stoecker,* 202 B.R. 429, 465 (Bankr.N.D.Ill.1996) (considering reasons for late filing of use tax claim; claim did not lose priority under § 726(a)(1), as delay was caused primarily by debtor's failure to register aircraft it had purchased from out-of-state vendor). *See also Century Boat Co.,* 986 F.2d at 158 (delay in late filing of claim was as much result of debtor's shoddy reporting and record-keeping as it was the result of actions by IRS).

Taking into account that taxing authorities may not be able to make a good faith estimate of tax liability until after completion of some investigation, as in *Stoecker* and *Century Boat,* it cannot be assumed that the IRS's late filing in this case was inexcusable. Even if the delay here were found to be careless and unjustified, the dynamics of a bankruptcy case are such that unexcused tardiness standing alone would not invariably make equitable subordination appropriate. The inquiry, then, must turn on the second requirement under *Mobile Steel* that there be injury to other creditors or unfair advantage to the claimant.

Interestingly, the only cited decision under § 726(a) that has applied § 510(c) to subordinate a tardily filed tax claim reached its conclusion largely on the basis of undue prejudice to other creditors. *In re Cole,* 172 B.R. 287, 290 (Bankr.W.D.Mo. 1994). In *Cole,* although the IRS had been listed as a creditor in a Chapter 7 case, unsecured creditors had expended time and legal fees to have the case transferred to another venue and to assist the trustee in recovering the assets that comprised the estate. The trustee in the case objected to IRS priority status under § 726(a)(1) when, eight months after the bar date, the IRS filed a claim in an amount that exceed that would consume the entire bankruptcy estate.

Concluding that it would be unfair to grant priority to the IRS claim in those circumstances, the *Cole* opinion subordinated it to claims of unsecured creditors. *Id.* at 290–92. Although *Cole* stated that its decision was founded on the first prong of the *Mobile Steel* test, the text of its ruling makes it clear that the holding combined considerations under both the first and second *Mobile Steel* factors:

[I]n ordinary circumstances it would be questionable whether mere late filing of a priority claim would amount to inequitable conduct, which is usually thought of in terms such as fraud or breach of fiduciary duties. The trustee did not contend that the IRS action in not filing its claim until after the bar date rose to the level of any actual wrongful conduct. However, the court finds the conduct is inequitable under the special circumstances of this case, where the IRS had multiple notices of the bar date and filing of the late claim would deprive the unsecured creditors of any distribution *even though the reason there are any assets to distribute is because those creditors spent significant time and money to transfer the case to a proper venue and assist the trustee in recovery*

*of the assets which comprise the estate. But for the creditors' work at the outset, there would be no estate to argue over. Id.* at 291 (emphasis added). In effect, the IRS in *Cole* sought to benefit from the creditors' expense and effort, and that was found to make the IRS's conduct inequitable.

Here, in contrast, the Trustee has presented no evidence that unsecured creditors took any action in this case other than to file proofs of claim. Given the absence of special circumstances like those found in *Cole,* the fact that unsecured creditors will receive no distribution from the estate does not by itself make the IRS's late filing inequitable.

A party seeking equitable subordination has an initial burden of offering some evidence to support its contention that the circumstances call for that result. *See Mobile Steel,* 563 F.2d at 701 (objection resting on equitable grounds must contain some substantial factual basis to support its allegation of impropriety); *Lifschultz,* 132 F.3d at 344. Also, where the nonmovant bears the burden of proof on an issue at trial, a party may procure an order of summary judgment in its favor by demonstrating that the nonmovant will be unable to produce any evidence at trial supporting an essential element of its claim. *Logan v. Commercial Ins. Co.,* 96 F.3d 971, 979 (7th Cir.1996) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). This result obtains even though the movant has not presented affirmative evidence disproving the essential claim. *See Id.*

Summing up, the Trustee has presented no evidence indicating that the IRS's delay in filing its claim in this case was inexcusable, or that the disadvantage to other creditors from allowing priority under § 726(a)(1) is any different from that which normally flows from the operation of the statute. Thus, the Trustee has made no showing to support the first and second elements required for equitable subordina-

tion. Because the Trustee has not shown that there is a need or factual basis for trial on the question of equitable subordination, the IRS's cross-motion will be granted.

### CONCLUSION

For reasons set forth above, the IRS's motion for summary judgment is granted, and the Trustee's cross-motion for summary judgment is denied. Judgment will enter in favor of the IRS by separate order.